**Calogero CAROLLO, Plaintiff,**

v.

**CEMENT AND CONCRETE WORKERS DISTRICT COUNCIL PENSION PLAN, and the Board of Trustees of the Cement and Concrete Workers District Council Pension Plan, Defendants.**

No. 96 CV 3152.

United States District Court,
E.D. New York.

May 19, 1997.

Legal Services for the Elderly (Edgar Pauk, of counsel), New York City, for plaintiff.

Bisceglie & Friedman, P.C. (Angelo R. Bisceglie, Jr., Carl A. Haberbusch, of counsel), Newark, NJ, for defendant.

### SECOND AMENDED MEMORANDUM AND ORDER

NICKERSON, District Judge:

Plaintiff Calogero Carollo brought this action on June 25, 1996 under the Employee Retirement Income Security Act of 1974 (the Act), 29 U.S.C. § 1001 *et seq.*, against the Cement and Concrete Workers District Council Pension Plan (the Plan) and its Board of Trustees (the Board). The Board is an "Administrator" of the Plan within the meaning of 29 U.S.C. § 1002(16)(A), and Carollo is a participant in the Plan within the meaning of 29 U.S.C. § 1002(7). This court has jurisdiction under 28 U.S.C. § 1331.

Carollo makes fifteen claims for relief, alleging, among other things, that the Plan's pension benefit accrual formula violates the Act and that the Board breached its fiduciary duties. The complaint seeks declaratory relief, reformation of the Plan, and recalculation of Carollo's pension benefit.

Defendants move to stay the action pending an audit by Internal Revenue Service (the Service), or, in the alternative, for summary judgment on the grounds that all Carollo's claims are time-barred.

Carollo cross-moves for partial summary judgment on his first two claims for relief. Claim One says that the Plan violates the Act's minimum accrual rates for employment after the Act took effect, April 1, 1976 (post-Act). Claim Two says that the Plan violates the Act's minimum accrual standards for employment before April 1, 1976 (pre-Act).

### I.

Carollo has had employment covered by the Plan in every year between 1969 to the present, except for 1975 and 1976. Plan records credit Carollo with six years of service before 1976 and nineteen years of service after 1977.

Carollo, now age 56, planned to retire in March, 1996. In January 1996, his counsel wrote to the Administrator of the Plan to ascertain Carollo's pension amount. On January 22, 1996, the Administrator responded that Carollo would be entitled to a monthly benefit of $850.35.

Counsel appealed this calculation to the Board, pointing out, among other things, that the Plan's benefit accrual rate fell below the Act's minimums. He asked for reformation of the Plan. On February 27, 1996, the Board told Counsel that it found no "basis to approve your appeal." The present complaint was filed on June 25, 1996.

## II.

For the reasons stated hereafter in Parts VII and VIII, the court will deny defendants' motions for a stay and summary judgment. The court turns first to Carollo's motion for partial summary judgment.

Under Federal Rule of Civil Procedure 56(c) the court will grant summary judgment if the evidence shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court views the record in the light most favorable to the non-movant and resolves all ambiguities and draws all reasonable inferences against the movant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987).

## III.

The essence of Carollo's claims is that the Plan unlawfully "backloads" pension benefits so that employees who have worked for 25 consecutive years receive a pension benefit calculated on a higher base than those who have not worked for 25 consecutive years.

When Congress passed the Act in 1974, it found that despite the enormous growth in employee benefit plans "many employees with long years of employment are losing anticipated retirement benefits owing to the lack of vesting provisions in such plans[.]"

29 U.S.C. § 1001(a). Not only did Congress enact minimum vesting standards determining when an employee is entitled to a pension benefit, but it established minimum accrual rates to prevent the employer from backloading benefits—making benefits accrue very slowly until the employee is near retirement age. *See Jones v. UOP,* 16 F.3d 141, 143 (7th Cir.1994) (citations omitted). A congressional report explained:

> The primary purpose of [minimum accrual rates] is to prevent attempts to defeat the objectives of the minimum vesting provisions by providing undue "backloading", i.e., by providing inordinately low rates of accrual in the employee's early years of service when he is most likely to leave the firm and by concentrating the accrual of benefits in the employee's later years of service when he is most likely to remain with the firm until retirement.

H.R.Rep. No. 93–807 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4688.

Section 1054 of the Act sets out three backloading tests—the "3% Rule," the "133⅓% Rule," and the "Fractional Rule." These three tests specify the minimum rates at which retirement benefits must accrue, and compliance with the Act requires satisfaction of one of the three. Carollo says, and defendants do not dispute, that the 133⅓% Rule is the only standard the Plan is capable of satisfying.

The 133⅓% Rule is met so long as (1) pension benefits accrue ratably such that participants receive, each year, a definite portion of their projected retirement benefit, and (2) the rate of accrual does not, in any given year, increase by more than 33⅓%. The statute requires that, under the plan, the benefit payable at retirement accrues at a rate such that the rate of accrual for any later plan year is "not more than 133⅓ percent of the annual rate at which [a participant] can accrue benefits for any plan year beginning on or after such particular plan year and before such later plan year." 29 U.S.C. § 1054(b)(1)(B).

The regulations under the Act provide that a Plan may not circumvent this "rate" requirement simply by changing the "base"

used in the calculation. Under many pension plans, employees accrue benefits at a percentage of their average monthly pay. The percentage is considered the "rate"; the average monthly pay constitutes the "base."

■ The regulation provides that the 133⅓% Rule is not satisfied "if the base for the computation of retirement benefits changes solely by reason of an increase in the number of years of participation." 26 C.F.R. § 1.411(b)–1(b)(2)(ii)(F). Thus, a pension plan may not change the base in the accrual formula—e.g. from average monthly pay to highest monthly pay—solely because a participant has worked more years than other participants. *Id.*

## IV.

The Plan in section 302(a) makes the following provisions pertinent here for a participant's benefit accrual. For the first 24 years of service after March 31, 1976, a participant's pension benefit accrues at 2% of Average Monthly Earnings, that is, a participant's career average pay (Average Earnings). Participants who work for 25 years without a break in service longer than two years, will, in their 25th year, have their pension benefit recalculated for all previous years of service at 2% of Final Average Monthly Earnings (Final Average Earnings). Final Average Earnings is the average pay based not on the career average pay but on a participant's highest five years of earnings in the ten years prior to retirement (Final Average Earnings). For each year of employment after such a participant's 25th year, the benefit accrues at 1.66% of Final Average Earnings.

In contrast, participants who have worked less than 25 years or have had a break in service for longer than two years will have all their post-Act employment credited at only 2% of Average Earnings, that is, career average pay.

## V.

Carollo says the Plan violates the Act's minimum accrual rates for post-Act service for two reasons. First, it fails to satisfy the 133⅓% Rule because the increase between year 24 and year 25 is greater than 33⅓% and this increase results from the Plan's use of a higher base, Final Average Earnings rather than Average Earnings. Second, the Plan unlawfully disregards a participant's years of employment prior to a two year break in service.

### A. *The Plan's change in base*

Carollo says that the Plan violates the Act because it changes the base "solely" by reason of a participant's increased service in violation of the regulation, 26 C.F.R. § 1.411(b)–1(b)(2)(ii)(F).

Defendants say that the Plan's rate of accrual remains constant at 2% through a participant's 25th year and then actually decreases to 1.66% for subsequent years of employment. Although they admit that the base used does change in a participant's 25th year of service (from Average Earnings to Final Average Earnings), they say that change is not "solely" because of an increase in the number of years of service, but is also conditioned on: (1) at least one year of service after December 1, 1980 and (2) no break in service longer than two years.

Plainly section 302(a) of the Plan operates so that few employees will have their pension benefit recalculated using the higher base. For many, this will be only because they have not participated in the Plan as long as others. It would make no sense to interpret "solely" in the regulations, 26 C.F.R. § 1.411(b)–1(b)(2)(ii)(F), in such a way as to defeat the purpose of the Act to prevent backloading. But neither can the term be ignored.

■ The word "solely" can be reconciled with the purpose of the Act by reading it to mean that while the base may be changed because of factors such as salary increases, the base may not be changed, absent such factors, by reference to length of service. Salary increases, often linked with longer service, can increase the amount of benefit by raising the base. Patently, nothing in the Act sought to limit the effect that wage increases would have on the base in the computation for retirement benefits.

Indeed, the Act's legislative history shows that Congress wished to insure that fluctua-

tions in a formula's accrual rate resulting from externalities to the Plan—i.e. salary differentials and changes in the social security wage base—would not violate the 133⅓% Rule:

> In applying the 133⅓% test, social security benefit levels for future years and other factors relevant in computing benefits, including salary differentials, are to be held constant. With respect to compensation related fluctuations in rates of accrual or, in an appropriate case, fluctuations on account of differing rates of contribution, it is the intention that such fluctuations be disregarded for purposes of applying the 133⅓% test. Such matter, of course, will be subject to regulations of the Secretary of the Treasury which will insure that the application of these principles are consistent with the purposes of the 133⅓% limitation.

120 Cong. Rec. S15737 (daily ed. Aug. 22, 1974) (statement of Sen. Williams) *reprinted in* 1974 U.S.C.C.A.N. 4639, 5180.

█ The regulation was drafted to reflect Congress' concern and distinguish between permissible and impermissible changes in the base. Although an employer may, of course, raise salaries after 25 years of service and thereby change the base, it may not change the base because of length of service.

█ But the Plan does exactly that. It raises the base in the 25th year of service, restricts that raise to the few who have had no break in service longer than two years and at least one year of service after 1980, and gives those favored few a bonanza by making the raise retroactive over their whole careers.

The Plan fails to satisfy the Act's minimum accrual rates.

### B. *The Plan's break in service provision*

Carollo says the Plan is also invalid because participants with a break in service longer than two years have a different retirement benefit than those without such a break.

The Act and its regulations require that a participant's retirement benefit equal the "normal" benefit a participant would receive at retirement. *See* 29 U.S.C. § 1054(b)(1)(B); 26 C.F.R. § 1.411(b)–1(b)(2)i(A). Normal retirement benefit is defined as "the greater of the early retirement benefit under the plan, or the benefit under the plan commencing at normal retirement age." 29 U.S.C. § 1002(22). "Normal retirement age" is the earlier of the retirement age under the Plan, or age 65 (so long as the participant's fifth anniversary of participation in the Plan is before he or she turns 65). 29 U.S.C. § 1002(24).

The Plan makes it impossible to determine what a participant's retirement benefit will be and how much of it has accrued. The Plan has two retirement benefits—one based on Final Average Earnings for participants with unbroken service and one based only on Average Earnings for participants with broken service. Participants cannot measure the rate at which their pension accrues because that rate depends on whether they will have a break in service before completing 25 years of qualified employment.

█ Moreover, a two year break in service is not a legitimate basis to disregard a participant's service prior to the break. For purposes of determining when a participant's benefit has vested, a Plan may only disregard service preceding breaks five years or longer or breaks exceeding the participant's length of service prior to that break. 29 U.S.C. § 1053(b)(3)(D)(i). The regulations make this section applicable to a Plan's benefit accrual formula. 29 C.F.R. § 2530.204–1(b)(1).

The Plan does not count service prior to any break longer than two years for purposes of determining the 25–year period marking the point when a participant's pension benefit is recalculated using the higher base. For this purpose, the Plan disregards this prior service no matter how long a participant worked prior to the break, and despite the fact that the break is less than five years.

Defendants suggest that this issue was litigated and resolved by the district court in *Meagher v. Cement and Concrete Workers District Council Pension Fund and Welfare Fund*, 89–CV–8364, 1992 WL 75128 (S.D.N.Y. March 21, 1992) (*Meagher I* ) and

*Meagher v. Board of Trustees of the Pension Plan of the Cement and Concrete Workers District Pension Fund,* 921 F.Supp. 161 (S.D.N.Y.1995) (*Meagher II*), aff'd, 79 F.3d 256 (2d Cir.1996). But the *Meagher* litigation, while involving the same plaintiff's counsel, did not address the question presented here. In *Meagher I,* plaintiff claimed that the two year break in service provision was arbitrary and capricious as applied to him because: (1) it did not distinguish between voluntary and involuntary breaks in service, and (2) the Fund regularly excused breaks due to disability or compulsory military service. The plaintiff did not claim, as does Carollo, that the break in service provision itself violates the Act.

The *Meagher* plaintiff did bring that claim in a later action. But at that point Judge Lowe held that the new claims were barred by res judicata because the parties in both actions were identical and, even though the same legal theory was not raised, the factual predicate underlying the earlier and the later claims was substantially the same. *Meagher II,* 921 F.Supp. at 167–68.

■ The parties here have not litigated previously the questions now at issue, and nothing in the holdings of *Meagher I* or *Meagher II* bind this court. The Plan's variable rate of accrual conditioned on a temporary break in service violates the Act.

The court will grant summary judgment to Carollo on his first claim for relief.

## VI.

Carollo's Second Claim alleges that the Plan violates the Act's minimum pension accrual rates for pre-Act service. He makes several distinct arguments.

■ He says that the Plan's amount of pre-Act accrual fails to satisfy the Act's requirements. Under 29 U.S.C. § 1054(b)(1)(D), the Act's three backloading tests, referred to above on page five, do not apply to pre-Act service so long as the accrued benefit is not less than one-half of the benefit that would have accrued had one of the Act's minimum accrual rates applied.

Carollo says that his pre-Act accrued benefits do not amount to one-half what would have accrued had the 133⅓% rule been in effect. But the regulations permit use of any of the Act's three minimum accrual standards—either the 3% Rule, the 133⅓% rule or the Fractional Rule—to determine whether the pre-Act accrued benefit is sufficient. *See* 26 C.F.R. § 1.411(b)–1(c)(2)(i). Because the parties agree that Carollo's pre-Act accrued benefit is at least one-half what would have accrued under the Fractional Rule, the regulations are satisfied.

■ Carollo says that the Plan nevertheless violates the Act with respect to pre-Act accrued benefits because it fails to establish a "catch-up" provision to compensate plan participants for the difference between the amount actually accrued pre-Act and what would have accrued had one of the three tests applied. He says the regulations require that any difference between the two amounts must be compensated for in the later years of the plan. 26 C.F.R. § 1.411(b)–1(c)(2)(v).

But Carollo has not presented facts to demonstrate that the Plan fails to comply with this regulation and the court is unable to conclude upon the current record that summary judgment on this point is warranted.

Finally, Carollo suggests that the Plan violates the Act because it does not apply the same standard to determine the sufficiency of pre-Act accrual amounts to all participants on a consistent basis. Carollo says that if the Plan applies the fractional rule to test the sufficiency of accrued benefits for participants who have not had their pension recalculated, the Plan must also apply the fractional rule to those who have had their pension recalculated. In support of his argument he quotes from the Act's legislative history:

> The plan may choose which of the 3 standards it wishes to apply for the past (subject to the antidiscrimination rules); however, the same standard must be applied to all the plan's participants.

H.R.Rep. No. 93–1280 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4639, 5057.

But this statement suggests only that the sufficiency of the pre-Act accrued benefits for all participants should be measured by the same backloading test—i.e. that participants' pre-Act accrued benefits should be one-half of the benefits that would have accrued had one of the backloading tests applied. Carollo has not presented any evidence that the Plan's pre-Act accrued benefits for all participants cannot satisfy the same backloading test, nor has he referred to any regulation which makes this an explicit requirement of the Act.

Because there are disputed issues of fact as to whether the Plan complies with the Act's minimum accrual rates for pre-Act service, summary judgment on Carollo's second claim for relief is inappropriate.

### VII.

Defendants say the doctrine of primary jurisdiction requires the court to stay this action pending the Service's review of the Plan for tax purposes.

In May 1994, Carollo's counsel, representing other participants, filed a complaint with the Service claiming that the Plan's pension accrual rate did not comply with the Act.

In August 1994, the Service notified the Board that it was commencing an audit of the Plan. In March 1995, the Board submitted the Plan to the Service with an application for a favorable determination letter. A week later, the local Service office told the Board that it was requesting technical advice from the National Office and suggested that the Board submit its comments to the Service's proposed statement of facts and questions. Eventually, in mid-July 1996, the Service's local office sent its request for technical advice to the National Office. The Plan's application for a determination letter is still pending.

The doctrine of primary jurisdiction allows a federal court to stay an action to give the parties a chance to seek an administrative ruling if the matter extends "beyond the 'conventional experiences of judges' or 'fall[s] within the realm of administrative discretion.'" *National Communications Ass'n v. American Tel. & Tel. Co.*, 46 F.3d

220, 223 (2d Cir.1995). *See also Reiter v. Cooper,* 507 U.S. 258, 268, 113 S.Ct. 1213, 1220, 122 L.Ed.2d 604 (1993). The doctrine is applicable so long as Congress intended the matter to be within the agency's authority, an intent which may be evinced from the overall statutory scheme.

Because the tax code grants favorable status to qualifying plans, that does not mean there is an administrative scheme for resolution of the present dispute. Nothing in the Act mandates qualification of a pension plan for tax purposes, *see Hollingshead v. Burford Equipment Co.*, 747 F.Supp. 1421, 1436 (M.D.Ala.1990), and a plaintiff need exhaust only those remedies provided by the Plan before filing suit under the Act. *See Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 825 (1st Cir.1988) (claim for benefits must first be presented to the named fiduciary for review).

Plan participants have no opportunity to be heard in an application for a favorable determination letter from the Service, and a determination by the Service, while entitled to deference, is not binding on the court. The Service has no authority to bring actions on behalf of participants; nor can it enforce in court even those parts of the Act that concern its regulatory authority. Congress recognized the Service's limited enforcement capabilities when it introduced the Act:

> The Internal Revenue Code provides only limited safeguards for the security of anticipated benefit rights in private plans since its primary functions are designed to produce revenue and to prevent evasion of tax obligations. The essence of enforcement under the Code lies in the power of the Internal Revenue Service to grant or disallow qualified status to a pension plan, thus determining the availability of statutory tax advantages.

H.R.Rep. No. 93–533, *reprinted in* 1974 U.S.C.C.A.N. 4639, 4642. *See also* 29 U.S.C. § 1132.

Moreover, while adjudication of this case does involve matters of some complexity, the doctrine may not be invoked merely because of the case's difficulty. Primary jurisdiction is appropriate when the court is

faced with discretionary judgments, such as whether a tariff is "reasonable." *See United States v. Western Pacific R.R. Co.,* 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956).

■ Here there is no room for administrative discretion. The Act and the regulations under it establish minimum accrual rates for pension benefits. Whether the Plan's provisions satisfy these minimums is a legal issue, "involving neither the agency's particular expertise or its fact finding process." *Environmental Defense Fund v. Wheelabrator Tech.,* 725 F.Supp. 758, 775 (S.D.N.Y.1989).

To stay the current action on the grounds of primary jurisdiction would undo the remedial goals of the Act and delay participants' right to sue in federal court. The motion for a stay will be denied.

## VIII.

Defendants say that summary judgment is warranted because the action is untimely.

■ While the Act establishes a limitations period for claims alleging a breach of fiduciary duty, *see* 29 U.S.C. § 1113, no express limitations provisions exist for other types of claims, such as those alleging the Plan violates the Act. Thus, to determine whether Carollo's claims are time-barred, the court analyzes separately his claims alleging a breach of fiduciary duties and those alleging that Plan provisions violate the Act.

### A. *Breach of fiduciary duty claims*

Three claims pleaded in the complaint— Claims Four, Six and Eleven—allege that the Trustees breached their fiduciary duties under the Act.

■ Section 1104 of Title 29 sets out the duties owed by fiduciaries to Plan participants. Fiduciaries, such as the Board members, are to discharge their duties solely in the interest of the participants and for the exclusive purpose of providing benefits to participants and to do so "in accordance with the documents and instruments governing the plan …" 29 U.S.C. § 1104(a)(1). Plan fiduciaries also have "prudent investor" duties. They are obligated to use the care

and diligence of "a prudent man acting in a like capacity[,]" and to diversify Plan investments so as "to minimize the risk of large losses[.]" 29 U.S.C. § 1104(a)(1)(B) & (C).

A participant may bring a claim for breach of fiduciary duty on behalf of the Plan under 29 U.S.C. § 1132(a)(2), which authorizes "appropriate relief under section 1109 of this title[.]" *See Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Section 1109 in turn provides that fiduciaries who breach their obligations "shall be personally liable to make good to such plan" any losses resulting from the breach, "and shall be subject to such other equitable or remedial relief as the court may deem appropriate." 29 U.S.C. § 1109(a).

■ Breach of fiduciary actions not on behalf of the Plan but on behalf of an individual may be brought under the Act's "catch-all" provision, 29 U.S.C. § 1132(a)(3). *Varity Corp. v. Howe,* —— U.S. ——, 116 S.Ct. 1065, 1077–78, 134 L.Ed.2d 130 (1996). That section authorizes a civil action by, among others, a participant to "enjoin any act or practice which violates any provision" of the Act, or to "obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]" 29 U.S.C. § 1132(a)(3).

■ The statute of limitations applicable to actions for breach of fiduciary duties is either six years after the date of the last action constituting part of the breach or three years after plaintiff had actual knowledge of the breach, whichever is earlier. The Act spells out these provisions in 29 U.S.C. § 1113, which states in pertinent part:

(a) No action may be commenced under [the subchapter entitled Protection of Employee Benefit Rights] with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part or with respect to a violation of this part, after the earlier of—

(1) six years after … the date of the last action which constituted a part of the breach or violation … or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation . . .

■■■ Carollo says, in essence, that § 1113 applies only to actions seeking relief under § 1109 and brought under § 1132(a)(2). Carollo misreads § 1113. Its limitations period applies to fiduciary duty actions brought not only under § 1132(a)(2), breach of fiduciary duty claims on behalf of a plan, but also under § 1132(a)(3), breach of fiduciary duty claims on behalf of an individual. Carollo's three breach of fiduciary duty claims are commenced under the Employee Benefit Rights subchapter of the Act and concern a "fiduciary's breach of any responsibility . . . under this part[.]" They are subject to the limitation periods set out in § 1113.

### 1. *Accrual of the claims under the six-year limitations period*

Defendants say that under § 1113, the six-year limitation period applies to Carollo's three breach of fiduciary duty claims and that, because these claims concern the legality of Article 508, the limitations period began to run in 1982 when the Plan was amended and Article 508 adopted. Alternatively, defendants suggest that Carollo may have had actual knowledge of the breach thereby triggering § 1113's three-year statute of limitations.

The six-year statute of limitations begins to run on the date of "the last action which constituted a part of the breach or violation." 29 U.S.C. § 1113. In his breach of fiduciary duty claims Carollo says that the Board's adoption and enforcement of certain Plan provisions is not in the interest of the participants and constitutes a breach of fiduciary duty. Thus, the underlying breach claimed is the implementation and enforcement of Article 508 of the Plan.

Where the breach is the enforcement of an unlawful plan provision, some courts have deemed the adoption of the offensive provision to be the "last action" constituting a breach. *See Int'l Union of Electronic, Elec., Salaried, Machine and Furniture Workers, AFL–CIO v. Murata Erie North America, Inc.,* 980 F.2d 889 (3rd Cir.1992); *Gluck v. Unisys Corp.,* 960 F.2d 1168 (3rd Cir.1992);

*DeVito v. Pension Plan of Local 819 I.B.T. Pension Fund,* 90–CV–5299, 1997 WL 26292 (S.D.N.Y. Jan. 22, 1997). But at least one court has concluded that fiduciaries breach their duty to maintain the plan in the interest of participants and beneficiaries each year the plan is maintained in violation of the Act. *See Starr v. JCI Data Processing Inc.,* 767 F.Supp. 633 (D.N.J.1991). That court limited the plaintiffs' claims to those that arose in the six years immediately preceding the filing of the complaint. *Id.*

The continuing breach rule has been applied to fiduciaries' "prudent investor" duty under the Act, § 1104(a)(1)(B). *See Buccino v. Continental Assur. Co.,* 578 F.Supp. 1518, 1521 (S.D.N.Y.1983) (fiduciary's continual failure "to divest itself of unlawful or imprudent investments" gives rise "to a new cause of action each time the Fund was injured"); *Gruby v. Brady,* 838 F.Supp. 820, 831 (S.D.N.Y.1993) (trustees who paid benefits at a rate the fund could not afford breached their "continuing obligation to monitor the Fund's financial condition and ensure the benefits payments are not excessive").

Nothing in the Act specifying that a "fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a), suggests that the duty to maintain the plan for the participants is less of a continuing obligation than the "prudent investor" duty.

■■■ This court deems the "continuing breach" theory a more appropriate way to determine what constitutes the "last act" of the fiduciaries' breach, and one that is more equitable. Rejecting the argument that the date of amendment was the date when non-fiduciary claims accrue under the Act, the court in *DeVito* noted:

[A]pplication of the date of plan amendment as the date of accrual would unjustifiably preclude numerous potential ERISA claims. Under such an application, any beneficiary who commences employment more than six years after the date of a challenged amendment would automatically be precluded from asserting [an] ERISA claim.

*DeVito,* 1997 WL 26292, at \*5 fn. 9. Such equitable concerns are equally at stake in fiduciary duty claims under the Act.

Claims Four and Six are based on the purported illegality of a Plan provision. Claim Four alleges that Article 508 of the Plan arbitrarily treats ˙ vested employees more harshly than non-vested employees, and Claim Six says that the terms of that Article fail to distinguish between involuntary and voluntary breaks in service.

With respect to these claims, the six-year statute of limitations begins to run each year the fiduciaries maintain the plan in violation of their duties under § 1104. Claims can only be maintained for those breaches in the six-years preceding the commencement of this suit. Claims Four and Six are timely.

Plaintiff's remaining breach of fiduciary duty claim, Claim Eleven, says that certain "practices" of the Trustees constitute a breach of fiduciary duty. Because it is unclear what those "practices" are, and the parties have submitted no evidence indicating when the breach occurred, the court is unable to determine what acts alleged constituted the "last action" for purposes of § 1113. The court thus is unable to determine whether this claim is time-barred.

### 2. *When the claim accrues under the three year limitations period*

If Carollo had "actual knowledge of the breach or violation" more than three years prior to commencement of the suit, his fiduciary duty claims would be time-barred. But defendants have not presented evidence that Carollo had such knowledge. They have submitted a Rule 56(f) affidavit seeking further discovery on this issue.

 But Rule 56(f) affidavits requesting additional discovery are appropriate when submitted on behalf of an opponent of the motion. Here defendants are the movants urging that the claims are time-barred and thus have the burden of presenting evidence in support of their motion. Defendants' present motion for summary judgment with respect to the three breach of fiduciary duty claims is denied at this time.

### B. *Non–Fiduciary Claims*

Carollo's remaining claims are brought pursuant to the Act's civil enforcement provision, 29 U.S.C. § 1132(a)(3). In essence, these claims allege that the Plan violates the Act and that the Board's actions violate both the Plan and the Act.

 Because these claims do not allege breach of fiduciary duty under § 1104, they are not subject to the limitations period in § 1113. *See* 29 U.S.C. § 1113. In the absence of a statutorily prescribed limitations period, the court applies the most analogous state statute of limitations, *see Bd. of Regents v. Tomanio,* 446 U.S., 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980), in this case, the six-year limitation period set forth in Rule 213 of New York's Civil Practice Law and Rules. *See* N.Y.C.P.L.R. 213; *Miles v. New York State Teamsters Conf. Pension and Retirement Fund,* 698 F.2d 593, 598 (2d Cir.1983).

That section has two subsections: § 213(2), applying to actions upon a "contractual obligation," and § 213(1), applying to "actions for which no limitation is specifically prescribed by law." The Second Circuit in *Miles* did not specify which governs. For the reasons stated in *Barnett v. International Business Machines Corp.,* 885 F.Supp. 581. (S.D.N.Y.1995), this court considers § 213(2), which applies to a contractual liability, to be more appropriate. The *Barnett* court said:

> [i]f the Court of Appeals had intended to rely upon the statute of limitations for actions for which no limitation is specifically proscribed by law, a more analogous state law provision would have been CPLR 214(2) which provides a limitations period for actions to recover upon a liability created by statute when no statute is otherwise applicable and it is thus more applicable to § 1132 claims than CPLR 213(1).

*Id.* at 590.

 The state limitations period for contractual actions has been applied almost exclusively in actions to recover benefits under § 1132(a)(1)(B) and rarely in actions for equitable relief under § 1132(a)(3). But the present action seeks reformation of the Plan

and recalculation of Carollo's benefits, and is sufficiently analogous to an action to recover benefits to warrant application of the six-year limitations period under § 213(2). *See DeVito*, 1997 WL 26292, at *4 (application of § 213's six-year limitations period to claims seeking pension plan's reformation).

■ Federal law determines when a claim under the Act accrues. *See Barnett*, 885 F.Supp. at 591. The six-year limitations period begins to run "when there has been 'a clear repudiation by the fiduciary which is clear and made known to the beneficiaries.'" *See Miles*, 698 F.2d at 598 (quoting *Valle v. Joint Plumbing Indus. Bd.*, 623 F.2d 196, 202 n. 10 (2d Cir.1980)). This accrual rule applies to actions challenging the terms of the Plan. *See DeVito*, 1997 WL 26292, at *5.

■ Carollo's claims accrued at the earliest on January 22, 1996 when the Board informed him that his monthly pension amounted to $850.35. This was six months before the complaint was filed and well within the six-year limitations period. Carollo's non-fiduciary claims are thus timely. Defendants' motion for summary judgment will be denied.

## IX.

The court denies defendants' motion for a stay and denies their motion for summary judgment. Plaintiff's motion for partial summary judgment is granted in part, and denied in part as described above.

The court will enter an order declaring the provisions of the Plan invalid to the extent detailed above. The court refers the case to Magistrate Judge John L. Caden to conduct such further proceedings as are appropriate to make the case ready for trial.

So ordered.