CEMENT AND CONCRETE WORK-ERS DISTRICT COUNCIL PENSION FUND, Frank Agnello, Barry Kaplan, Maurice Foley, Alfred G. Gerosa, Lawrence Lane, Michael Melnick, in their fiduciary capacity as the trustees of the Cement and Concrete Workers District Council Pension Fund, Plain-tiffs–Appellants,

v.

ULICO CASUALTY COMPANY, Defendant–Appellee.

No. 05–6518–cv.

United States Court of Appeals, Second Circuit.

Sept. 25, 2006.

E. Joshua Rosenkranz (Edward M. Joyce, Victor J. Rocco, Richard Cashman, Lisa M. Cirando, on the brief), Heller Ehrman LLP, New York, NY, for Plaintiffs–Appellants.

Lon A. Berk (Nkeisha J. Dumas, on the brief), Hunton & Williams LLP, McLean, VA, for Defendant–Appellee.

Present: Hon. THOMAS J. MESKILL, Hon. SONIA SOTOMAYOR and Hon. ROBERT A. KATZMANN, Circuit Judges.

### SUMMARY ORDER

The Cement and Concrete Workers District Council Pension Fund, along with its trustees (collectively, the "Fund"), appeals the district court's decision dated September 13, 2005 granting the motion of defendant Ulico Casualty Company ("Ulico") for summary judgment and dismissing the Fund's complaint. We assume knowledge of the facts and procedural history of the case and refer to them only for convenience.

The gravamen of the Fund's complaint is that, under the terms of an insurance policy with a $10–million coverage limit that became effective on April 1, 1999 (the "Policy"), Ulico should have provided coverage for a lawsuit brought against it on December 24, 1999 (the "*La Fata* suit"). The *La Fata* plaintiffs alleged that the Fund's benefits formula resulted in considerably lower benefits for those retirees, such as the plaintiffs, who had retired with fewer than 25 years of continuous service, in violation of the "anti-backloading" provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"). In 2002, after Ulico had denied coverage, the Fund

reached a settlement whereby it (1) paid the *La Fata* class (approximately 900 people) $10.9 million to compensate them for past underpayment, and (2) adjusted the future pensions of the class members so as to comply with ERISA, at an actuarial cost (in present-day dollars) of $14.2 million. The parties also agreed that the Fund would bring this case against Ulico and, if successful, add 50 percent of its recovery to the *La Fata* plaintiffs' retroactive relief.

In a thorough and well-reasoned opinion, the district court ruled that (1) the *La Fata* action was not within the scope of the Policy because it did not allege a breach of fiduciary duty, and (2) even if the *La Fata* action were otherwise within the scope of the Policy, it would be excluded from coverage by the Fund's knowledge of its wrongful act at the time it obtained the Policy. *See Cement & Concrete Workers Dist. Council Pension Fund v. Ulico Cas. Co.*, 387 F.Supp.2d 175 (E.D.N.Y.2005). We review this grant of summary judgment *de novo*, construing the evidence most favorably to the non-moving party (the Fund) and granting all reasonable inferences in its favor. *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir.2005). In doing so, we are mindful that summary judgment should not be granted in contract disputes unless "the agreement's language is unambiguous and conveys a definite meaning." *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir.1993). In addition, we observe that "policies of insurance, drawn as they ordinarily are by the insurer, are to be liberally construed in favor of the insured." *Miller v. Cont'l Ins. Co.*, 40 N.Y.2d 675, 678, 389 N.Y.S.2d 565, 358 N.E.2d 258 (1976).

 As a preliminary matter, we hold that, to win this action, the Fund must demonstrate that Ulico was, in fact, obligated to cover the *La Fata* action. The Fund contends that it is sufficient that La Fata, at the time Ulico denied coverage, had the *potential* to be a covered action, and that Ulico thus breached its duty to indemnify it for the *La Fata* suit. New York law, which governs this action, directly contradicts the Fund's contention that this potential-coverage standard applies to the duty to indemnify. *See Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419, 423, 488 N.Y.S.2d 139, 477 N.E.2d 441 (1985) (even where an insurance company breaches its duty to defend, and thus is potentially liable for the costs of litigation, there still "can be no duty to indemnify unless there is first a covered loss"); *id.* at 424, 488 N.Y.S.2d 139, 477 N.E.2d 441 (whereas "[t]he duty to defend is measured against the allegations of pleadings[,] the duty to pay is determined by the actual basis for the insured's liability to a third person").

 The Policy covers any loss that the Fund "shall become legally obligated to pay as damages for claim or claims which are first made against the [Fund], during the Policy Period by reason of any Wrongful Act [committed by the Fund] *provided further that the [Fund] had no knowledge of such wrongful act prior to the effective date of the Policy*" (emphasis added). (A 55) We agree with the district court that the Fund unquestionably had knowledge of the wrongful act alleged in *La Fata*—the failure to comply with ERISA's anti-backloading rules—long before the April 1, 1999 effective date. Not only had the Fund already been sued over this issue, but it also had been found liable. *See Carollo v. Cement and Concrete Workers Dist. Council Pension Plan*, 964 F.Supp. 677, 682 (E.D.N.Y.1997). After failing to obtain insurance coverage in that dispute (because its claim was filed too late), the Fund settled with the individual plaintiff in *Carollo*, admittedly to avoid class-action liability in that action. It was

at least foreseeable, if not highly probable, that the Fund would soon face a class-action suit seeking to extend the ruling of *Carollo* to all eligible members—and that is precisely what *La Fata* was. Moreover, following *Carollo*, the IRS investigated the Fund's failure to comply with the applicable rules. When the Fund agreed to come into compliance with respect to active participants only, the IRS agreed not to seek sanctions, in light of the Fund's having acted in good-faith reliance upon the IRS's past determination letters. However, nothing in the IRS's ruling would have led any reasonable person to believe the Fund was now in compliance with respect to retirees, the class at issue in *La Fata*. At most, the Fund could have reasonably believed that equitable concerns would dissuade a court or government agency from imposing significant liability on it for its wrongful act; it could not have reasonably believed that it had not committed such an act.[1]

The district court also found that the policy only covered wrongful acts that were committed by the trustees while acting in a fiduciary capacity, as defined by ERISA. Acknowledging that we have stated that amending a multi-employer plan can be a fiduciary act for ERISA purposes, *see Siskind v. Sperry Ret. Program*, 47 F.3d 498, 506 (2d Cir.1995);

*Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032, 1040 (2d Cir.1985), the district court found that intervening Supreme Court decisions have undermined the reasoning of those cases. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999) (rejecting lower court's determination that whether an act was fiduciary turned "on the type of plan being amended for the simple reason that the plain language of the statute defining fiduciary makes no distinction"); *Lockheed Corp. v. Spink*, 517 U.S. 882, 891, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996) (same). In light of our holding that this claim is excluded by the Fund's prior knowledge, we do not decide now whether our precedent remains valid.[2]

Finally, because the Fund conceded at oral argument that it is not entitled to defense costs if its claim for indemnification fails, we do not consider the argument in the Fund's briefs that Ulico is liable for defense costs so long as the *La Fata* suit had the potential to be a covered action.

Accordingly, the judgment of the district court is **AFFIRMED**.

1. We reject the Fund's argument that the prior-knowledge exclusion applies only when the Fund had prior knowledge not simply that it had committed a wrongful act, but also that it would face liability for that act. The Fund concedes that the exclusion's plain language requires only knowledge of a "wrongful act," but takes the position that an act cannot be "wrongful" as defined by the Policy until liability flows from it. There is no support for this tortured reading in the Policy itself. Moreover, if the exclusion were interpreted in this fashion, it would be rendered superfluous, because New York law already precludes coverage of liability that is known at the time of a policy's purchase. *See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh v. The Stroh Cos.,* Inc., 265 F.3d 97, 106 (2d Cir.2001). We see no ambiguity in the meaning of the prior-knowledge exclusion that would defeat summary judgment.

2. We similarly do not reach Ulico's alternative argument that the claim is excluded because it involves benefits. We observe, however, that the so-called "benefits exclusion" clause does not, by its terms, obviously exclude an action in which what is at issue is neither whether someone received or did not receive benefits nor an amendment to the plan that affected anyone's eligibility to participate.