898 F.2d 946
 1990-1 Trade Cases 68,963
 INTERNATIONAL RAW MATERIALS, LTD., Appellant,
v.
STAUFFER CHEMICAL COMPANY, TG Soda Ash, Inc., General
Chemical Partners, Tenneco Minerals Company, FMC
Wyoming Corp., Kerr-McGee Chemical
Corp., American Natural Soda
Ash Corporation.
 No. 89-1546.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 16, 1989.
Decided March 21, 1990.
As Amended March 22, 1990.
 
 David Berger (argued), H. Laddie Montague, Jr., Howard Langer, Jeffrey Rockman, Berger & Montague, P.C., David W. Marston, Buchanan Ingersoll, P.C., Philadelphia, Pa., for appellant.
 Norman H. Seidler (argued), Coudert Brothers, New York City, Patrick W. Kittredge, Kittredge & Donley, Philadelphia, Pa., for appellees, American Natural Soda Ash Corp.
 Edward J. Waite, III, General Chemical (Soda Ash) Partners, Parsippany, N.J., for appellee, General Chemical (Soda Ash) Partners.
 M. Mason Pattillo, Stauffer Chemical Co., Shelton, Conn., for appellee, Stauffer Chemical Co.
 Eugene G. McGuire, Tg Soda Ash, Inc., Stamford, Conn., for appellee, Tg Soda Ash, Inc.
 Alan R. Kidston, FMC Wyoming Corp., William R. Jentes, Mark E. Ferguson, Kirkland & Ellis, Chicago, Ill., for appellee, FMC Wyoming Corp.
 John M. Badger, Tenneco Minerals Co., Lakewood, Colo., Stephen W. Armstrong, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for appellee, Tenneco Minerals Co.
 Carolyn G. Hill, Kerr-McGee Chemical Corp., Oklahoma City, Okl., Alfred H. Wilcox, Pepper, Hamilton & Scheetz, Philadelphia, Pa., Thomas W. Johnston, Keck, Mahin & Cate, Chicago, Ill., for appellee, Kerr-McGee Chemical Corp.
 Before HIGGINBOTHAM, Chief Judge,* SCIRICA, Circuit Judge, and POLITAN, District Judge.**
 OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Chief Judge.
 
 
 1
 This is an appeal by plaintiff, International Raw Materials, Ltd. ("IRM"), from a summary dismissal of a suit alleging that the defendants, who include the major producers of soda ash in the United States, conspired to fix the rates of domestic terminalling services for soda ash in violation of Sec. 1 of the Sherman Act, 15 U.S.C. Secs. 1-7 (1988). The district court, 716 F.Supp. 188, treated the defendants' motion to dismiss as a motion for summary judgment and granted it before the plaintiff was able to conduct effective discovery. The court found that the defendants were exempt from liability under the Sherman Act because of their certification as exporters under the Webb-Pomerene Act, 15 U.S.C. Secs. 61-65 (1988). Because we find that there are genuine issues of material fact that should be explored and resolved, we will vacate the judgment and remand to the district court for further proceedings.
 
 I.
 FACTS AND PROCEDURAL HISTORY
 
 2
 IRM is the operator of a terminal in Port Longview, Washington which is used to load "white bulk product," primarily soda ash, onto ocean-going vessels.[1] Defendants are the American Natural Soda Ash Corporation ("ANSAC") and its member organizations: Stauffer Chemical Company, TG Soda Ash, Inc., General Chemical (Soda Ash) Partners, Tenneco Minerals Company, FMC Wyoming Corporation and Kerr-McGee Chemical Corporation. Each of the member organizations is a United States corporation or partnership with its principal place of business in the United States. Several of them are owned wholly or partly by foreign companies. Stauffer Chemical Co. is wholly owned by Rhone Poulenc Chemie S.A., a French corporation and one of the largest producers of soda ash in the world. TG Soda Ash is owned by the French chemical conglomerate, Societe Nationale Elf Aquitaine. General Chemical Partners is forty-nine percent owned by Australian Consolidated Industries.
 
 
 3
 ANSAC was organized in 1983 as a United States export association and registered with the Federal Trade Commission under the Webb-Pomerene Act. The Webb-Pomerene Act was passed to allow United States companies exporting United States products to compete more effectively in the world market. H.R.Rep. No. 1056, 64th Cong., 2d Sess. 1-2 (1917); S.Rep. No. 1118, 64th Cong., 1st Sess. 1 (1916). It provides a limited exception to the Sherman Act prohibition on acts in restraint of trade when those acts are performed by certified United States organizations engaged solely in export trade and the acts are in the course of their export trade. ANSAC's Certificate of Incorporation and its membership agreement establish that it was organized to engage solely in export trade in soda ash. ANSAC maintains that loading its soda ash onto ships (i.e., terminalling) is an act in the course of its export trade.
 
 
 4
 Between 1982 and 1984, IRM entered into separate terminalling agreements with several of the major soda ash producers who now belong to ANSAC. The rates on these contracts ranged from $5.65 to $8.46 per metric ton, depending on volume. After ANSAC was formed, each of the defendants who then had a contract with IRM assigned it to ANSAC and advised IRM to negotiate solely with ANSAC for future terminalling contracts. A July 1985 agreement between IRM and ANSAC for terminalling services set the rate per metric ton at between $3.72 and $4.72. IRM argues that the reduction in rates was a result of ANSAC's price-fixing in violation of the Sherman Act, while ANSAC claims that its negotiations for terminalling prices fall within the exception provided by the Webb-Pomerene Act.
 
 
 5
 In 1987, the Port of Portland, Oregon entered into a lease with Hall-Buck Marine Inc. ("Hall Buck") for land on which Hall Buck was to build a terminal in the Port of Portland for the loading of white bulk product, not limited to soda ash. The lease provides that the premises leased shall be used only for "[c]onstruction and operation of a facility for the export of soda ash and compatible mineral bulk products." Appendix ("App.") at 202. At the same time, ANSAC and Hall Buck entered into a five-year contract that included two five-year renewal options. As reported in the press, the agreement provided that ANSAC would guarantee a minimum annual shipment of 500,000 metric tons of soda ash through the Portland facility. IRM claims that this agreement allowed Hall Buck to finance construction of the terminal. IRM also alleges that the agreement between Hall Buck and the Port of Portland in effect put ANSAC into the terminalling business because through it ANSAC financed the building of the terminal to be used for products other than soda ash, and the agreement contemplated "the actual existence or formation of a joint venture between Hall Buck and ANSAC to operate the terminal." Appellant's Brief ("Applt's Br.") at 8 (citing App. at 122). It provides that "[t]he parties recognize that, during the term of this Agreement, Hall-Buck and ANSAC may form a new joint venture to operate the facility." App. at 225.
 
 
 6
 IRM filed suit in district court in November 1987, alleging that the members of ANSAC, who account for virtually all of the soda ash production in the United States, were conspiring in a horizontal price-fixing scheme, in violation of the Sherman Act, to depress terminalling prices through their monopoly. IRM submitted interrogatories and document requests and the defendants responded by moving for dismissal under Fed.R.Civ.P. 12(b)(6), claiming, as a matter of law, that their certification under the Webb-Pomerene Act exempted them from liability.
 
 
 7
 The district court considered the motion to dismiss as a motion for summary judgment under Fed.R.Civ.P. 56 and initially denied it by an order dated February 10, 1988, holding that IRM was "entitled to obtain sufficient discovery to develop a material fact issue" for the purpose of responding to the motion. The court explained that "[t]o limit [IRM'S] ability to conduct discovery as contemplated by the defendants, would deny [IRM] its rights under the Federal Rules of Civil Procedure." App. at 115.
 
 
 8
 IRM claims that, in spite of this ruling, it was never able to obtain the information it needed because defendants continued to object to all of its discovery as overbroad and unnecessary to the disposition of their motion to dismiss; specifically, IRM was unable to obtain a copy of ANSAC's lease with Hall Buck. In January, 1989, IRM filed a motion to compel discovery. It reports that the question of discovery was raised at an untranscribed conference on April 12, and that the court deferred the issue until oral argument on the defendants' motion. Applt's Br. at 4. The court thereafter heard oral argument on the motion to dismiss, deemed it a motion for summary judgment, granted it, and denied the motion to compel discovery as moot.
 
 II. DISCUSSION
 
 9
 In reviewing a grant of summary judgment, we apply the same test that the district court should have applied under Fed.R.Civ.P. 56. Summary judgment is appropriate if "there was no genuine issue as to any material fact and ... the moving party ... is entitled to a judgment as a matter of law." Arnold Pontiac-GMC, Inc. v. General Motors Corp., 786 F.2d 564, 568 (3d Cir.1986) (citation omitted), modified in part, Arnold Pontiac-GMC, Inc. v. Budd Baer, Inc., 826 F.2d 1335 (3d Cir.1986); Tomalewski v. State Farm Life Insurance Co., 494 F.2d 882, 884 (3d Cir.1974). The facts must be viewed in the light most favorable to the party opposing summary judgment. Arnold Pontiac-GMC, Inc. v. General Motors Corp., 786 F.2d at 568.
 
 
 10
 IRM appeals the district court's grant of summary judgment on several grounds. First, it argues that when a case presents a novel issue of law (here, the use of the Webb-Pomerene Act as a defense to a private civil suit alleging antitrust violations), judgment should be deferred until an adequate factual record can be established. 10A C. Wright, A. Miller and M. Kane, Federal Practice & Procedure Sec. 2728 at 191 (1983); see also Phoenix Savings & Loan, Inc. v. Aetna Casualty & Surety Co., 381 F.2d 245, 249 (4th Cir.1967). Second, IRM contends that defendants' price-fixing in the terminalling of its product is a domestic activity that falls outside the Webb-Pomerene exception as shown by the express language of the statute and by its legislative history. Third, IRM questions whether ANSAC actually qualifies for Webb-Pomerene certification when two of its members are wholly owned subsidiaries of foreign soda ash producers and another is almost half owned by a foreign company. It claims that to certify such an organization defeats the purpose of the Webb-Pomerene Act, which was meant to give United States companies engaged solely in export an advantage in competing with foreign companies. Fourth, IRM argues that, even if ANSAC was properly certified under the Act, ANSAC and its members have lost their exemption from the Sherman Act by entering the domestic terminalling business themselves for products other than soda ash, in violation of the Webb-Pomerene's Act's limitation of an association's activities to export trade in the product for which it is certified. It contends that issues of material fact regarding the defendants' role in the new Port of Portland terminal preclude summary judgment. Applt's Br. at 14.
 
 
 11
 This court has said, in another private antitrust suit, that "where the facts are in possession of the moving party a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course." Bogosian v. Gulf Oil Corp., 561 F.2d 434, 444 (3d Cir.1977) (quoting Costlow v. United States, 552 F.2d 560, 564 (3d Cir.1977)) (citing Ward v. United States, 471 F.2d 667, 670 (3d Cir.1973)), cert. denied, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). See also Arnold Pontiac-GMC, Inc. v. General Motors Corp., 786 F.2d at 568 (summary judgment in antitrust cases before plaintiff has had full opportunity for discovery may be reversible error). This appeal raises complex questions of antitrust law, and a more complete factual record would be helpful to the resolution of some of them. There may be antitrust cases in which it is proper to grant summary judgment prior to effective discovery, but we would be reluctant to do so here.
 
 
 12
 Appellant has alleged that because the appellees were uncooperative in discovery, it could not obtain the information it needed regarding appellee's relationship with Hall Buck, and it seeks the opportunity to develop the factual record more fully. It claims that the relationship involves ANSAC in activities in violation of its status as a Webb-Pomerene organization. In his affidavit, the president of IRM said that,
 
 
 13
 [a]ccording to [the lease], the new terminal facility is not limited to the soda ash business and p 9.1 anticipates a joint venture between ANSAC and Hall Buck to operate the terminal. As a result, ANSAC is de facto entering into the general business of terminalling services in white bulk chemical products.
 
 
 14
 App. at 123. IRM cannot substantiate its allegations on the basis of the present record, but it believes it can substantiate them through full discovery. We cannot say whether or not it will be able to do so. However, we hold that its allegations may present a disputed question of material fact that precludes summary judgment prior to discovery when the appellees have the facts in their possession.
 
 
 15
 In its memorandum opinion, the district court said, "if IRM were to aver that ANSAC has been directly profiting from the terminalling services of other export products, such conduct would not fall within this exemption." App. at 434. The district court suggests that only once the profits start to roll in does a joint venture to profit from terminalling export products other than soda ash become relevant to the exemption of ANSAC as a Webb-Pomerene organization. We suggest that the court need not wait so long before taking notice. If, for example, an agreement were already in place for ANSAC to profit by such exports in the future, that agreement could also be relevant. Appellee says that there is nothing in his relationship with Hall Buck that affects his Webb-Pomerene status and appellant says that there is. We disagree with the district court's conclusion that "a more developed record is not required...." App. at 428. The district court cannot decide this issue properly until it has before it the facts as to the exact nature of that relationship.
 
 III. CONCLUSION
 
 16
 In vacating the district court's grant of summary judgment, we take no stand on any of the substantive issues of law relating to the Sherman Act and the Webb-Pomerene Act raised by appellant. We merely hold that the grant was premature, and that a factual record should be developed through discovery as a basis for resolving questions of disputed issues of material fact. Accordingly, we will vacate the grant of summary judgment and remand to the district court for proceedings consistent with this opinion.
 
 
 
 *
 Honorable A. Leon Higginbotham, Jr., became Chief Judge of the Third Judicial Circuit on January 16, 1990
 
 
 **
 Honorable Nicholas H. Politan, United States District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 Soda ash is a white granular substance used primarily in the production of glass. Other white bulk products include sodium sulfate, urea, zinc oxide, talc, phosphatic fertilizers and bentonite