John KONDRAT, Plaintiff,

v.

John ASHCROFT, Attorney General, United States Department of Justice [1]; and Kathleen Hawk, Federal Bureau of Prisons, Defendants.

No. 3:00CV461.

United States District Court,
E.D. Pennsylvania.

Oct. 3, 2001.

**1.** John Ashcroft became the United States Attorney General, effective February 2001, to succeed Janet Reno. Under Fed.R.Civ.P. 25(d)(1), Ashcroft is automatically substituted as the defendant in this action.

Cynthia R. Vullo, Koff, Wendolowski, Ferguson & Mangan, P.C., Wilkes-Barre, PA, for plaintiff.

Anne K. Fiorenza, Assistant U.S. Attorney, Harrisburg, PA, for defendants.

### *MEMORANDUM*

MUNLEY, District Judge.

Before the court for disposition is the defendants' motion for summary judgment in this employment discrimination case. The plaintiff is John Kondrat and the defendants are John Ashcroft, Attorney General, United States Department of Justice and Kathleen Hawk, Federal Bureau of Prisons, Defendants. The matter has been fully briefed and is ripe for disposition.

### Background

Defendant Federal Bureau of Prisons hired the plaintiff, John Kondrat, as a physician assistant on May 11, 1997. Physician assistants work under the license of a physician, who grants them privileges to perform certain medical tasks. Plaintiff worked under the medical license of Dr. Niianjana Shah, the Clinical Director of the Federal Correctional Institution–Schuylkill, (hereinafter "FCI–Schuylkill"). Plaintiff is a white Caucasian male of United States origin. Shah is a female of Indian national origin. She supervised the medical performance of the physician assistants employed at the institution.

Plaintiff has brought a "reverse discrimination" suit against the defendants and alleges as follows in his complaint: During plaintiff's employment at FCI–Schuylkill, Shah was heard to say in the presence of others that "this is a white man's world" and that "she is sick of it." Compl. ¶ 14. While he was employed there, Shah informed plaintiff that she intended to "get him" and that he was the only one she could "get." *Id.* at ¶ 15. Other employees have heard Shah make racially inappropriate and derogatory remarks and have

made complaints to Defendant Federal Bureau of Prisons management and personnel. *Id.* at 16—17.

On April 2, 1998, an incident occurred where the plaintiff was running a chronic care clinic at the Camp at FCI–Schuylkill. Although it is not exactly clear, the Camp is apparently located apart from the Institution. Shah ordered him to abandon the task that he was performing at the Camp and proceed to the Institution to retrieve some medicine. Four physician assistants were located at the Institution, and plaintiff asked Shah to have one of them bring the medicine to the Camp. Shah refused and plaintiff said, "Doc, this is bullshit. I'll come down and pick the meds up." Compl. ¶ 18.

A month later the plaintiff was terminated and this statement was used against him as justification for the dismissal. Also used against him were entries made in his "performance log" by Defendant Shah, that plaintiff claims are false and/or unjustified. *Id.* at ¶ 21–22. These entries were signed and backdated by Shah. *Id.* at ¶ 23. Plaintiff sought Equal Employment Opportunity ("EEO")counseling with respect to his termination and during the course of the EEO investigation, was advised that certain performance records were missing from his file. *Id.* at ¶ 25.

Plaintiff alleges that Shah engaged in the following unlawful discrimination and harassment: 1) she made offensive and hostile comments directed at white males and to the plaintiff in particular; 2) she unjustly criticized the performance of the plaintiff and other white males; 3) she did not treat the plaintiff in the same manner as his female and non-white or foreign counterparts; 4) she engaged in retaliatory and harassing behavior after complaints were made about her conduct; 5) She falsely and unjustly accused the plaintiff of unsatisfactory performance to have the

plaintiff discharged immediately prior to the end of his one-year probationary period. *Id.* at ¶ 27.

Plaintiff's complaint is made up of two counts. The first is a claim of discrimination/hostile working environment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The second count alleges retaliation. At the close of discovery, the defendants moved for summary judgment bringing the case to its present posture.

**Standard of review**

The granting of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Knabe v. Boury,* 114 F.3d 407, 410 n. 4 (3d Cir.1997) (citing Fed.R.Civ.P. 56(c)). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.,* 898 F.2d 946, 949 (3d Cir.1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A fact is material when it might affect the outcome of the suit under the governing law. *Id.* Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its bur-

den by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

In analyzing summary judgment motions in cases involving discrimination, a burden-shifting analysis is utilized which was set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The purpose of the burden-shifting review is to determine whether the plaintiff has indeed established a *prima facie* case. First, the plaintiff must establish unlawful discrimination. Once the plaintiff does establish a *prima facie* case, the burden shifts to the employer to proffer a legitimate, nondiscriminatory reason for terminating him. Once the employer has offered a legitimate reason, the burden shifts back to the plaintiff to demonstrate that the proffered reason was merely pretextual. *Geraci v. Moody–Tottrup, Int'l Inc.,* 82 F.3d 578, 580 (3rd Cir.1996) (citing *McDonnell Douglas, supra* and *Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). This requires the plaintiff to point to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the

employer's action. *Iadimarco,* 190 F.3d at 166.

## Discussion

Defendants move for summary judgment on several grounds. They argue that the person who dismissed the plaintiff was not Dr. Shah, but the warden, and there is no proof that he did anything discriminatory. They also contend that the plaintiff's case cannot survive the *McDonnell Douglas* burden shifting analysis. Further, it is their position that plaintiff has provided insufficient evidence to sustain a cause of action for either hostile work environment or retaliation. We shall address these issues *seriatim.*

### I. Was Dr. Shah a decision maker?

As a preliminary matter we will discuss defendants' argument that the decision to terminate the plaintiff's employment was made by Warden Reich, a white male, and no evidence has been presented that his decision was racially motivated. Accordingly, they argue that judgment should be entered in their favor. Plaintiff contends that the decision to terminate him was masterminded and orchestrated by his supervisor, Dr. Shah, a female of Indian national origin, and that sufficient evidence has been presented for a jury to determine that she was a decision maker with regard to the termination. We agree.

 If sufficient evidence is presented connecting a supervisor to the adverse employment decision, that supervisor can be deemed to be a decision maker for purposes of the discharge. *See Abrams v. Lightolier, Inc.,* 50 F.3d 1204, 1214 (3d Cir.1995). In the instant case, the record reveals that while Warden Reich may have been the one who officially terminated the plaintiff, Shah was the official who proposed that the termination occur. (Pl.Ex. 9, Def. Resp. to Interrogatories, at No. 11). Moreover, she provided the warden with all the information that supported his decision to fire the plaintiff. (Def. Ex. 2, Dep. Reish at 72–73). Accordingly, his decision was based on Shah's representations regarding the plaintiff's alleged poor performance. Each reason cited by the warden came verbatim from "performance logs" that were given to him by Dr. Shah. (Def. Ex. 2, Dep. Reish at 65–66). We find that this evidence is sufficient to support a jury finding that Shah was a decision maker for purposes of the plaintiff's discharge. Accordingly, even though Warden Reish is a White male against whom no evidence of discrimination has been presented, we find that the defendants can still be held liable due to the alleged actions of Shah.

### II. Burden Shifting Analysis

Next, we will perform the *McDonnell Douglas* burden shifting analysis described above. The plaintiff has met his initial burden of establishing a *prima facie* case.

The law provides as follows:

It shall be unlawful employment practice for an employer—

(1) to fail to or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2.

 In the typical racial discrimination case, the plaintiff must first establish a *prima facie* case of racial discrimination by demonstrating, *inter alia,* that he belongs to a racial minority. The Third Circuit Court of Appeals has held that, Title VII suits by White plaintiffs asserting "reverse discrimination" are viable even though the plaintiff is not a member of a racial minority. To establish a *prima facie* case in such a situation, the plaintiff must present sufficient evidence to allow a

fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII, that is race, color, religion, sex, or national origin. *Iadimarco v. Runyon,* 190 F.3d 151, 161 (3d Cir.1999).

Plaintiff has presented the following evidence to meet his *prima facie* case. During the time in question eleven (11) physician assistants were employed by FCI Schyulkill. Four out of the eleven were white men of United States origin, the plaintiff, Raymond Machak, Kenton Hubble and David Steffan. (Def. Ex.4, Pl. Dep. at 33–34). The remainder were foreign medical graduates. *Id.* As noted above, Dr. Shah is of Indian National origin. Evidence has been presented that she complained that this is a white man's world and that she was "tired of it." She also opined that the white man was going to ruin the world. (Pl.Ex. 5, Hubble Dep. at 19). Shah also made known her opinion that the United States is run by white men and that she needed to do something about it, and that she had the power to do so. (Pl.Ex. 23, Avellino Dep. at 5).

Further, plaintiff has provided proof that Shah treated white physician assistants worse than the others. For instance, she judged their medical decisions more harshly and held the white physician assistants to a higher standard of care than the non-whites. (Def. Ex. 4, Pl. Dep. at 34; Def. Ex. 1A, Pl. Aff. at 10; Pl.Ex. 6, Avellino Dep. at 23–27). If problems arose regarding an inmate, Shah would approach the white physician assistants to remedy it. (Def. Ex. 4, Pl. Dep. at 42–43). If an inmate complained, the white physician assistants would bear responsibility. *Id.* at 43. Ernesto Rafael Roces, the Health Services Administrator noted that the white males in the hospital area were treated worse than other staff. (Pl.Ex. 18; Roces Aff. at 7–8). In addition, other white physician assistants were aware of the differential treatment. (Pl.Ex. 5, Hubble Dep. at 25; Pl.Ex. 7 Machak Decl. ¶¶ 4–7, and Exhibit D thereto, Raymond Machak's Complaint of Discrimination).

Moreover, indications were made that Shah was aiming her discriminatory intent directly at the plaintiff. Evidence has been provided that she indicated to him on at least two occasions that because he was the only one of the physician assistants with less seniority than she had, that she could "get" him. (Def. Ex. 4, Pl. Dep. at 30–31, 37–38). She specifically warned him in December 1997 (several months before his termination) that she would "get" him. (Def. Ex. 1A, Pl. Aff. at 11) She made similar statements to one of the plaintiff's co-workers, Andrea Avellino, who testified that Shah had told her that the plaintiff was the only one in the department with less seniority than she (Shah) had and she was going to make sure that she took advantage of that. (Pl. Ex. 23, Avellino Aff. at 6).

■ Accordingly, we find that the plaintiff has submitted sufficient evidence to establish a *prima facie* case of discrimination and the burden thus shifts to the defendants to establish that his dismissal from employment was based on legitimate non-discriminatory reasons. *Geraci, supra.* The defendants easily meet their burden by claiming that it was the plaintiff's work performance and insubordination that caused him to be terminated.

■ The defendants having met their burden, the burden shifts back to the plaintiff for proof that the legitimate reasons for his discharge were actually pretextual and the actual reason was discrimination. As noted above, this requires the plaintiff to point to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discrimina-

tory reason was more likely than not a motivating or determinative cause of the employer's action. *Iadimarco*, 190 F.3d at 166.

Plaintiff has met his burden. First, he has provided proof to demonstrate that the "performance logs" were apparently given to the plaintiff upon his termination, but at a later date, they were altered——at least to the extent that they were backdated and signed at a later date by Dr. Shah. *See* Def. Ex. 5, Yovichin Dep. at 12, 13; Def. Ex. 3, Coratello Dep. at 99–105.

In his statement of material facts, the plaintiff has provided a detailed refutation of the events cited in the performance log. *See* Pl. Counterstatement of Mat. Fact, ¶¶ 15–22. We need not examine each with particularity at this point. Suffice it to say that plaintiff has sufficiently raised questions of fact regarding the events that allegedly led to his dismissal.

Having performed the employment discrimination burden-shifting analysis, we find that the plaintiff has met his burden and judgment in favor of the defendants is inappropriate at this time. The fact finder will have the task to determine whether discrimination was the reason behind plaintiff's termination.

### III. Hostile work environment

██ The defendants also claim that the plaintiff has not submitted sufficient evidence to support the hostile work environment claim. We disagree. With regard to hostile work environment the courts have developed a totality of the circumstances test. Elements examined include, the frequency of the conduct, its severity, whether it was physically threatening or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Systems Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

██ The Third Circuit Court of Appeals has enunciated five elements necessary to establish a successful hostile work environment claim: (1) the plaintiff suffered intentional discrimination because of his or her membership in the protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would have detrimentally affected a reasonable person of the same protected class in that position; and, (5) the existence of respondeat superior liability. *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 753–54 (3d Cir.1995).

██ Based on the evidence presented by the plaintiff, some of which is described above, we find that he has submitted sufficient evidence to support a jury finding that he suffered from a hostile work environment. He has not complained of merely one or two instances, but a more or less continuing mistreatment by Dr. Shah. Moreover, the jury could properly conclude that it is the type of treatment that would have detrimentally affected a reasonable person in plaintiff's position. Thus, it would be inappropriate to grant summary judgment for the defendants on this issue.

### IV. Retaliation

Defendants lastly challenge the plaintiff's claim of retaliation. They claim that the plaintiff has not presented sufficient evidence to make reasonable his belief that he was being discrimination against. We disagree. The plaintiff has presented an adequate amount of evidence, which if believed by the jury, could lead to a finding of discrimination.

### Conclusion

The defendants' motion for summary judgment will be denied. Sufficient evidence has been presented that Dr. Shah was a decision maker with regard to plain-

tiff's termination, and that she acted with discrimination because the plaintiff is a white male. It will be for the jury to determine exactly what occurred with respect to plaintiff's termination. An appropriate order follows.