Jack FLAHERTY, Jr., Jack Flaherty, Sr. and Carol Flaherty, parents and natural guardians on their own behalf and their son, Jack, Jr., Plaintiffs,

v.

KEYSTONE OAKS SCHOOL DISTRICT, Dr. Carl DeJulio, Superintendent of Keystone Oaks School District, Scott Hagy, Principal of Keystone Oaks High School, Alex Covi, Assistant Principal of Keystone Oaks High School, Joseph Perry, Athletic Director of Keystone Oaks High School and Jeff Sieg, Athletic Coach of Keystone Oaks High School, Defendants.

Civil Action No. 01–586.

United States District Court, W.D. Pennsylvania.

Feb. 26, 2003.

Pepper Hamilton, Attn. Kim M. Watterson, Esq., Pittsburgh, PA, ACLU of PA, Witold J. Walczak, Esq., Pittsburgh, PA, for Plaintiffs.

Peacock, Keller, Ecker & Crothers, Attn Douglas R. Nolin, Esq., Washington, PA, for Defendants.

### *OPINION* and *ORDER OF COURT*

AMBROSE, Chief Judge.

#### *SYNOPSIS*

Pending before the Court is Plaintiffs' Motion for Summary Judgment (Docket No. 59) regarding the constitutionality of certain policies of Keystone Oaks School District's ("KOSD") Student Handbook of 2000–2001. Defendants have filed a Brief in Opposition (Docket No. 62), and Plaintiffs have filed a Reply Brief (Docket No. 65). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, said Motion is granted.

#### *OPINION*

#### I. *BACKGROUND*

This action arises out of the disciplinary action taken against Jack Flaherty, Jr. by Defendants for posting Internet messages on a website message board. Engaged in a message board conversation regarding an upcoming volleyball game with Baldwin High School, Jack Flaherty, Jr. posted three messages from his parents' home and one from school.[1] For engaging in the

---

1. Jack Flaherty, Jr. entered the conversation at his home by posting the following message:

> K.O.
> I think that V.P. richard [sic] has made some very great points (especially about Baldwin) no one said that ko was winning states this year. I don't know where you got this outlandish idea. this [sic] is only the fourth year of mens volletball [sic] in our school and we don't have middle-school teams like some other teams in our section do. we [sic] are also a triple a team going against some teams with twice the enrollment as us. you [sic] also have to admit that our section is arguably the toughest in the state. Also our secret weapon [redacted] will show the "Icon" what's up. Im [sic] not out to make excuses I think we are gonna hold our own this year just ask North Hills.
> PS Bemis [Bemis is Pat Bemis, a student at Baldwin High School and on their volleyball team] from Baldwin: you're no good and your mom [Pat Bemis' mother is an art teacher at KOSD] is a bad art teacher baldwin [sic] please

*See*, Exhibit 4. The next message from Jack Flaherty, Jr. was from his home.

> hell yeah
> I couldn't agree with you more. Someone better call the Guiness book of world records, for the biggest lashing in mens volleyball history. These purple panzies [sic] are in for the suprise [sic] of their lives. I predict players and fans will want to transfer to Ko after this game is through. I also predict that Bemis is going to shed tears on the court. So people from baldwin [sic] I will tell you this, you better save the ridiculous price of 2 dollars to go watch your school get embarrassed at for Bemis to make a spectacle of himself [sic]
> P.S. My dog can teach art better than Bemis' mom.

*Id.* From home, Jack Flaherty, Jr. responded to a posting from someone with the name Kauffmoney.

> bitch please
> Keystone Oaks has a few prospects for the all W.P.I.A.L [sic] team for example Middle hitter [redacted]. He stands 6 foot 7 inches and is ready to show those plum foreigners how to spike in America. Also another player is # 5 Jack Flaherty (The True Icon) he is 72 inches of mullet madness who is ready to let loose. Last but not least is [redacted]. He is young but is a strong canidate [sic] for W.P.I.A.L. MVP this year. watch [sic] out he is only a freshman! P.S. Kaufmoney eat my wad ho

*Id.* The next message sent by Jack Flaherty, Jr. was sent from school while in a journalism class.

> how [sic] bad is ko [sic] going to beat Baldwin [sic] I predict a lashing and for Bemis to shed tears.

*Id.*

conversation and posting the messages both at home and school, Defendants punished Jack Flaherty, Jr. pursuant to their policies set forth in the Student Handbook.

Plaintiffs in this case, Jack Flaherty, Jr., Jack Flaherty, Sr. and Carol Flaherty, parents and natural guardians of Jack Flaherty, Jr., filed a Complaint and subsequently an Amended Complaint (Docket No. 37) against Defendants.[2] Therein, Plaintiffs allege, *inter alia,* that the policies used to punish Jack Flaherty, Jr. for expressions that occurred off campus and at home are vague and overbroad in violation of Plaintiffs' constitutionally protected rights under the First and Fourteenth Amendments to the United States Constitution, as well as Article I, § 7 of the Pennsylvania Constitution. *See,* Amended Complaint. The particular policies identified are contained within the Discipline, the Student Responsibility, and the Technology provisions. Plaintiffs' Exhibit 1,

pp. 4–5, 17–18. Said provisions contain the terms "abuse" or "abusive," "harassment," "inappropriate," and "offend" which Plaintiffs argue are vague and overbroad.[3]

Defendants have filed a Brief in Opposition to Plaintiffs' Motion for Summary Judgment and Plaintiffs' filed a Reply Brief. The issue is now ripe for review.

## II. *LEGAL ANALYSIS*

### A. *Standard Of Review*

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a

---

2. The parties have informed me that they have reached a partial settlement. As a result, Plaintiffs have filed a Motion for Summary Judgment on the only remaining issue of whether the policies set forth in the KOSD Student Handbook that govern student expression are unconstitutionally vague and overbroad. *See,* Motion for Summary, ¶ 1.

3. The KOSD Student Handbook sections at issue are as follows:

*DISCIPLINE*

**INFRACTIONS AND CONSEQUENCES**

\* \* \* \* \* \*

–**Attack** (physical, verbal, or written *abuse* directed toward a school employee)

\* \* \* \* \* \*

-*Harassment* (sexual, ethnic, racial, physical, verbal—see "Sexual Misconduct") /Bullying

 *Harassment* is defined as any ongoing pattern of *abuse,* whether physical or verbal.

\* \* \* \* \* \*

–*Inappropriate* **language/verbal** *abuse* (may be considered "Attack") **toward an employee**

–*Inappropriate* **language/verbal** *abuse* **toward another student**

Plaintiffs' Exhibit 1, pp. 4–5 (bold emphasis in original, italic emphasis added).

*STUDENT RESPONSIBILITIES*

\* \* \* \* \* \*

It is the responsibility of the student to:

\* \* \* \* \* \*

13. express ideas and opinions in a respectful manner so as not to *offend* or slander others;

*Id.* at 17 (emphasis added).

\* \* \* \* \* \*

B. Technology *Abuse*

\* \* \* \* \* \*

c. use of computers to receive, create or send *abusive,* obscene, or *inappropriate* material and/or messages;

*Id.* at 18 (emphasis added).

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.,* 898 F.2d 946, 949 (3d Cir.1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir.1987). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material when it might affect the outcome of the suit under the governing law. *Id.*

Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. Summary judgment must

therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *White v. Westinghouse Electric Co.,* 862 F.2d 56, 59 (3d Cir.1988), *quoting Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

### B. *Overbroad and Vague*

■■■ Plaintiffs seek a declaration that portions of the KOSD Student Handbook are unconstitutionally overbroad and vague because particular portions allow for punishment of speech that school officials deem to be "inappropriate, harassing, offensive or abusive" without defining those terms or limiting them in relation to geographic boundaries (at school or school sponsored events) or to speech that causes a material and substantial disruption to the school day in violation of *Tinker v. Des Moines Independent Community School Dist.,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).[4] *See,* Plaintiffs' Brief, p. 7–8. A statute may be declared unconstitutional when it is sufficiently overbroad. *Sypniewski v. Warren Hills Regional Bd. of Educ.,* 307 F.3d 243; 258 (3d Cir.2002). "An overbroad statute is one that is designed to punish activities that are not constitutionally protected, but which prohibits protected activities as well." *Killion v. Franklin Regional School Dist.,* 136 F.Supp.2d 446, 458 (W.D.Pa.2001).

Only a statute that is substantially overbroad may be invalidated on its face. The Supreme Court has never held that

**4.** In a footnote, "Defendants dispute the Plaintiffs' legal contentions that there is some heightened standard beyond that set forth in *Tinker....*" *See,* Defendants' Brief, p. 7, n. 4. I do not read Plaintiffs' Brief to argue in support of a heightened standard as it applies to the issue at hand. To the contrary, when discussing this Motion for Summary Judg-

ment regarding the constitutionality of the policy, as opposed to the standard applicable to the settled question of whether KOSD could properly punish Jack for speech he uttered at home, Plaintiffs argue that the *Tinker* standard applies. *See,* Plaintiffs' Brief, p. 9, 11–12. Consequently, both parties apply the *Tinker* standard.

a statute should be invalidated merely because it is possible to conceive of a single impermissible application. Instead, in a facial challenge to overbreadth and vagueness of a law, a court must determine whether the enactment reaches a substantial amount of constitutionally protected conduct.

*Id.* at 458 (citations omitted). Under the " 'void for vagueness doctrine,' a governmental regulation may be declared void if it fails to give a person adequate warning that his conduct is prohibited or if it fails to set out adequate standards to prevent arbitrary and discriminatory enforcement." *Killion,* 136 F.Supp.2d at 459, *citing, Chicago v. Morales,* 527 U.S. 41, 56, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) and *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); *Sypniewski,* 307 F.3d at 266. In determining the reach of a policy, every reasonable interpretation must be considered to save the statute, including administrative interpretation and implementation of the policy. *Sypniewski,* 307 F.3d at 259; *Killion,* 136 F.Supp.2d at 458, *citing, Ward v. Rock Against Racism,* 491 U.S. 781, 795–96, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).

### 1. *Substantial disruption*

■ Initially, Plaintiffs argue that the policies are overbroad and vague because they can be interpreted to prohibit speech that is protected by the First Amendment in violation of *Tinker.* Plaintiffs' Brief, p. 12. In *Tinker,* the United States Supreme Court held that a student's speech at school may be regulated only where it substantially disrupts school operations or interferes with the rights of others or there is a realistic threat of doing so. *Id.* at 513, 89 S.Ct. 733; *Saxe,* 240 F.3d at 217; *Sypniewski,* 307 F.3d at 253. After a through review of the record, I agree with Plaintiffs. I note that at one point, Defendants make a fleeting reference to the freedom of expression provision in the Stu-

dent Handbook which provides, in pertinent part: "Students have the right to express themselves in any manner unless such expression directly interferes with the educational process...." *See,* Defendants' Brief, p. 12, citing Plaintiffs' Exhibit 1, p. 12. Said provision, however, is separate and apart from the discipline, the student responsibility, and the technology provisions at issue. In addition, the freedom of expression provision does not require or put a school official on notice that his authority to discipline under a school policy is limited to those instances where a student's abusive, offensive, harassing or inappropriate behavior causes or is likely to cause a substantial disruption to school operations. *See, Tinker, supra.* Defendants have not cited, and I cannot find, any other language in the KOSD Student Handbook that would require school officials to make an assessment of whether the speech is substantially disruptive so as to justify employing the policies that would curtail speech.

■ Rather, in opposition, Defendants go beyond the Student Handbook and look to Board Policies to save the Student Handbook from violating the *Tinker* standard. *See,* Board Policy Nos. 257, 248 and 218 at Defendants' Exhibits G–I (respectively). For example, Defendants assert Board Policy No. 218 complies with the substantial disruption requirement of *Tinker* when it states:

> Teaching staff members and other employees of this Board having authority over students shall have the authority to take such reasonable actions as may be necessary to control the disorderly conduct of students in all situations and in all places where such students are within the jurisdiction of this Board and *when such conduct interferes with the educational program of the schools or*

*threatens the health and safety of self or others.*

Defendants' Exhibit I, p. 4 (emphasis added). I find Defendants' reliance on the Board Policies lacking.

First, Board Policies are not referred to or incorporated in the Student Handbook of 2000–2001. *See,* Plaintiff's Exhibit 1. Therefore, I do not find the definitions or language in the Board Policies to be relevant to my analysis of the Student Handbook. Second, even if Board Policy No. 218 should be considered part of the same and read in conjunction therewith, the language contained in Board Policy No. 218 is inclusive, rather than restrictive, as required under *Tinker.* As a result, Board Policy No. 218 authorizes discipline where a student's expression that is abusive, offending, harassing, or inappropriate, "interferes with the educational program of the schools," but does not limit it to those circumstances that cause a substantial disruption to school operations as required under *Tinker.* Thus, I find that the breadth of the Student Handbook policies are overreaching in that they are not linked within the text to speech that substantially disrupts school operations. Absent said language, I can find no way to reasonably construe the Student Handbook policies to avoid this constitutional problem. Therefore, said policies are unconstitutionally overbroad.

■ Assuming, *arguendo,* I did not find that said policies were overbroad, I would still find that the Student Handbook policies are unconstitutionally vague. I recognize that "[g]iven a school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanction." *Bethel School District No. 403 v. Fraser,* 478 U.S. 675, 686, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986); *Syp-*

*niewski,* 307 F.3d at 260. Nevertheless, a statute may not be so vague as to permit it to be arbitrarily enforced in violation of the First Amendment. *Sypniewski,* 307 F.3d at 260, *citing, Saxe,* 240 F.3d at 207; *Killion,* 136 F.Supp.2d at 459. Here, the terms abuse, offend, harassment, and inappropriate, as set forth in the relevant Student Handbook policies are simply not defined in any significant manner. *See,* Plaintiffs' Exhibit 1, pp. 4–5, 17–18. Defendants argue that I should look to the Board Policies for more specific definitions. Again, I decline to do so because there is no reference in the Student Handbook to put the students on notice to look there. Thus, contrary to Defendants' assertions, I find that the relevant Student Handbook policies do not provide the students with adequate warnings of the conduct that is prohibited.

■ Moreover, the policies are not just vague in definition, but are also vague in application and interpretation such that they could lead to arbitrary enforcement. In applying the Student Handbook policies (and the Board Policies as Defendants argue), Scott Hagy, Principal of Keystone Oaks High School, did not interpret the same to require him to first analyze the situation to determine if the expression creates or is likely to create a substantial disruption. Instead, Mr. Hagy testified that whether to discipline a student would "depend," but does not define with any particularity that it would depend on whether the expression caused or is likely to cause a substantial disruption. *See,* Defendants' Exhibit A, pp. 38–40, 49–51. While Mr. Hagy believes that he can discipline a student for bringing "disrespect, negative publicity, negative attention to our school and to our volleyball team," this is simply not sufficient to rise to the level of "substantial disruption" under *Tinker.* Defendants' Exhibit A, p. 40; *see also,*

*Saxe,* 240 F.3d at 215, *citing, Tinker,* 393 U.S. at 509, 89 S.Ct. 733 ("The Supreme Court has held time and again, both within and outside of the school context, that the mere fact that someone might take offense at the content of speech is not sufficient justification for prohibiting it."); *Killion v. Franklin Regional School District,* 136 F.Supp.2d 446, 455 (W.D.Pa.2001), *quoting, Saxe,* 240 F.3d at 212 ("The mere desire to avoid 'discomfort' or 'unpleasantness' is not enough to justify restricting student speech under *Tinker.*"). Thus, I find that relevant policies in the Student Handbook (even when considered in conjunction with the Board Policies) are so vague that it could permit Defendants to apply them arbitrarily.

▮ Defendants further argue that there was a history of problems with Jack Flaherty, Jr. and other students acting out at school and at school-sponsored events, such that the punishment was justified under the policy. *See,* Defendants' Brief, pp. 15–18. A school district can justify a policy where it can demonstrate a concrete threat of substantial disruption that is linked to a history of past events. *Sypniewski,* 307 F.3d at 262; *Killion,* 136 F.Supp.2d at 455. To do so, however, the policy must have been created as a result of the past history of events. Defendants' argument misconstrues this concept. If such was the case here, then the policies at issue must have been developed in response to the problems they were having with Jack Flaherty, Jr. and other students. *See, id.* There is no absolutely no evidence that the policies at issue were adopted in response to a history of particular actions or circumstances. Consequently, this argument lacks merit.

As a result, I find said portions of the Student Handbook to be unconstitutionally overbroad and vague in that they fail to limit a school official's authority to discipline a student's expression to those instances where the expression caused, or there exists a realistic threat of, a substantial disruption to school operations.[5]

## 2. *Geographical limitation*

▮ Plaintiffs also argue that the Student Handbook is unconstitutionally overbroad and vague because it fails to geographically limit a school official's authority to discipline expressions that occur on school premises or at school related activities, thus providing unrestricted power to school officials. *See,* Plaintiffs' Brief. Defendants have not pointed to and I cannot find any language in the KOSD Student Handbook that geographically limits a school official's authority. In opposition, however, Defendants again go beyond the Student Handbook and look to Board Policies in an effort to save the Student Handbook from being unconstitutionally overbroad and vague. *See,* Board Policy No. 218 (Defendants' Exhibit I). Specifically, Defendants assert Board Policy No. 218 provides the requisite geographical limitation to "student conduct in school, during the time spent in travel to and from school, and all after school and evening activities, including [sic] detention," and "in all places where students are within the jurisdiction of the Board...." Defendants' Exhibit I, p. 3–4. The Board Policies, however, are not referred to or incorporated in the Student Handbook of 2000–2001. *See,* Plaintiff's Exhibit 1. Therefore, I do not find the definitions or language in the Board Policies to be relevant to my analysis of the Student Handbook. Thus, I find the breadth of the Student Handbook policies are overreaching in that they are not

---

**5.** I note that I could end my analysis here, because this finding, alone, is sufficient to render the relevant portions of the Student Handbook unconstitutional. Nevertheless, for completeness sake, I will continue with Plaintiffs' geographical limitation argument.

linked within the text to any geographical limitations. *See, Killion,* 136 F.Supp.2d at 459. Absent said language, I can find no way to reasonably construe the Student Handbook policies to avoid this constitutional problem. Therefore, said policies are unconstitutionally overbroad.

 Even if I did consider Board Policy No. 218, I would still find the Student Handbook policies unconstitutionally vague. Defendants' own interpretation of the application of said Board Policy in connection with the Student Handbook policies demonstrates the vagueness problems. Specifically, when Mr. Hagy was asked whether it matters if the comments of Jack Flaherty, Jr. were made from his home computer, Mr. Hagy said "No." Plaintiff's Exhibit 10, p. 38. Later, however, Mr. Hagy testified that punishment of speech depends on "if it's tied to the school." *Id,* p. 51. Mr. Hagy further testified that he believes that under the policies he can punish a student for speech that occurs outside of school premises and that is not related to any school activity, where the expression brings "disrespect, negative publicity, negative attention to our school and to our volleyball team." *Id.* at 40. Similarly, Jeff Sieg, athletic coach at Keystone Oaks High School, believes that he can punish Jack Flaherty, Jr. for posting an internet message from his home computer because "it's an embarrassment to my team and to my other players." Plaintiffs' Exhibit 11. pp. 16–17

"Q. Coach Sieg, explain to me what you think are the limits of your authority to punish your volleyball players for speech that takes place outside of school.

A. If it is going to bring shame to the school or my program, I basically do what I did. I could suspend; I could expel."

*Id.* at 32. Thus, without any further definition or limitation, the policy could be (and is) read by school officials to cover speech that occurs off school premises and that is not related to any school activity in an arbitrary manner. Therefore, the Board Policy language does not cure or negate the vagueness found in the Student Handbook. Consequently, I find the Student Handbook policies at issue to be unconstitutionally overbroad and vague because they permit a school official to discipline a student for an abusive, offensive, harassing or inappropriate expression that occurs outside of school premises and not tied to a school related activity.

Simply put, the Student Handbook policies could be interpreted to prohibit a substantial amount of protected speech. Based on the evidence, the policies are overbroad because they are not limited to speech that causes, or is likely to cause, a substantial disruption with school operations as set forth in *Tinker.* Moreover, the Student Handbook policies do not contain any geographical limitations. Thus, the policy could be read to cover speech that occurs off the school's campus and not school related. Therefore, the Student Handbook policies are unconstitutionally overbroad and vague.

### ORDER OF COURT

And now, this **26th** day of February, 2003, after careful consideration of Plaintiff's Motion for Summary Judgment (Docket No. 59), it is ordered that said Motion (Docket No. 59) is granted. The Clerk of Court is directed to mark this case "CLOSED" *forthwith.*