Robert **VAN WUYCKHUYSE**, Plaintiff,

v.

**METROPOLITAN LIFE INSURANCE COMPANY** and **Kodak Accidental Death Insurance Plan**, Defendants.

No. 00–CV–6292.

United States District Court, W.D. New York.

Feb. 9, 2001.

Lawrence I Heller, Rochester, NY, for Plaintiff.

Christian D. Hancey, Nixon Peabody L.L.P., Rochester, NY, for Defendants.

## Decision and Order

SIRAGUSA, District Judge.

### I. Introduction

The Plaintiff filed a complaint with the Court on June 21, 2000, alleging that the Defendants improperly denied benefits to him under an accidental dismemberment policy. Both parties agree that the plan involved here falls under the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"). This case is before the Court on the Defendants' motion for summary judgment and the Plaintiff's cross-motion for summary judgment. Because the Court finds that the Plan Administrator's decision was not arbitrary and capricious, the Court denies the Plaintiff's motion for summary judgment and grants the Defendants' motion for summary judgment, dismissing the case.

### II. Background

The plan at issue here is the January 1, 1997, Kodak Accidental Death Insurance Plan ("Plan"). A copy of that plan is attached to the affirmation of Pamela R. Cromp as Exhibit A. Under Article nine of the Plan, a beneficiary who loses his thumb is entitled to dismemberment benefits of twenty-five percent of the employee's choice of coverage. Since the Plaintiff chose coverage of $500,000, he would be entitled to $125,000 if he met the Plan's requirements for loss of thumb.

On November 20, 1997, the Plaintiff was severely injured in a hunting accident when a shotgun slug or bullet hit his right thumb. According to his doctor, Jeffrey A. Jones, M.D., the Plaintiff lost "3/4 of his thumb metacarpal, loss of the bone attaching the thumb to the rest of the hand (trapezium), as well as skin and muscle damage and complete transaction of the median nerve all from a single bullet wound." Letter from Jeffrey A. Jones, M.D. to Ian Mackler, Esq. (Nov. 23, 1998) at 1 (contained in Cromp affirmation, Exhibit F).

The Plan defines Loss of Thumb at section 2.17, which states, in pertinent part: "'Loss of Thumb' means that a Participant's thumb is severed at or above knuckle joint nearest the hand." Section 13.4, Governing Law, states that, "[t]his document shall be construed and governed in accordance with the laws of New York State, except as such laws are preempted by applicable federal law."

Article 11 of the Plan gives the Plan Administrator "the exclusive right: to interpret the Plan; to determine eligibility for Coverage; to determine eligibility for Benefits; to construe any ambiguous provision of the Plan; to correct any default; to supply any omission; to reconcile any inconsistency; and to decide any and all questions arising in the administration; interpretation; and application of the Plan." Plan section 11.1(b). This article further provides:

The Plan Administrator shall have full discretionary authority in all matters related to the discharge of his responsibilities and exercise of his authority under the Plan including, without limitation, his construction of the terms of the plan and his determination of eligibility for Coverage and Benefits. It is the intent of the Plan that the decisions of the Plan Administrator and his action with respect to the Plan shall be conclusive and binding upon all persons having or claiming to have any right or interest in or under the Plan and that no such decision or action shall be modified upon judicial review unless such decision or action is proven to be arbitrary or capricious.

Plan section 11.1(c).

On or about May 13, 1998, the Plaintiff applied for accidental dismemberment benefits in the amount of $125,000. The application was made to the Metropolitan Life Insurance Company. *See* Cromp affirmation Exhibit B. Metropolitan was the Claims Administrator under the Plan. *See* Plan section 13.1. On November 11, 1998, Metropolitan denied the Plaintiff's claim finding that while the Plaintiff had lost, "approximately 75% of [his] thumb metacarpal (the bone between the thumb and the hand), [his] thumb was not severed."

Pursuant to section 11.4 of the Plan, the Plaintiff appealed this decision to the Plan Administrator, the Director, Compensation, Benefits and Staffing, U.S. & G., Human Resources, Eastman Kodak Co. *See* Ian Mackler, Esq. letter to Susan Izzo

(Nov.18, 1998), Cromp affirmation Exhibit D. On June 16, 1999, the Plan Administrator, Pamela R. Cromp, affirmed the decision of the Claims Administrator. *See* Pamela R. Cromp letter to Ian Mackler, Esq. (June 16, 1999), Cromp affirmation Exhibit E. Ms. Cromp wrote:

The facts demonstrate that Mr. Van Wuyckhuyse's injury did not involve a severing of the thumb at or above the knuckle joint and, therefore, did not constitute a "Loss of Thumb" within the meaning of the plan. Although Dr. Jones noted that Mr. Van Wuyckhuyse's injury was "similar to" a thumb severance and replantation, he also acknowledges in his 11/23/98 correspondence that "the thumb blood vessels were not severed and the thumb was not physically entirely separated from Mr. Van Wuyckhuyse's body."

Pamela R. Cromp letter to Ian Mackler, Esq. (June 16, 1999), Cromp affirmation Exhibit E at 1.

### III. Analysis

The law on summary judgment is well settled. Summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the "evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Once the moving party has met its initial obligation, the opposing par-

ty must produce evidentiary proof in admissible form sufficient to raise a material question of fact to defeat a motion for summary judgment, or in the alternative, demonstrate an acceptable excuse for its failure to meet this requirement. *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187 (5th Cir.1991); Fed.R.Civ.P. 56(f). Once the moving party has met its burden, mere conclusions or unsubstantiated allegations or assertions on the part of the opposing party are insufficient to defeat a motion for summary judgment. *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). The Court, of course, must examine the facts in the light most favorable to the party opposing summary judgment, according the non-moving party every inference which may be drawn from the facts presented. *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir.1990). However, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir.1996).

Both counsel agree that Ms. Cromp's actions must be interpreted under the standard set forth by ERISA. As the Second Circuit observed in *Sullivan v. LTV Aerospace and Defense Co.*, 82 F.3d 1251, 1254, "[a]ny discussion of the appropriate standard of review of a trustee's interpretation of an ERISA benefit plan begins with the seminal case of *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)." In *Firestone*, the Supreme Court held that "[a] trustee may be given power to construe disputed or doubtful terms [of a plan], and in such circumstances that trustee's interpretation will not be disturbed if reasonable." *Id.* at 111, 109 S.Ct. 948. Where, as here, the Plan's administrator has been given discretionary authority to interpret the Plan, the Court must not disturb the administrator's determination unless it is arbitrary and capricious. *See Pagan v. NYNEX Pension Plan*, 52 F.3d 438 (2d Cir.1995).

The Defendants argue in their memorandum of law (September 19, 2000) that the Plaintiff can prevail only if he can establish that Ms. Cromp's interpretation of the Plan terms and application to the record is without any support. The Plaintiff contends that the Plan Administrator misinterpreted the word "severed" in contrast with that word's interpretation in a long line of New York cases. The Defendants counter that the Plan Administrator's action of interpreting the Plan term "severed" did not require the resolution of any statutory or common-law questions that might be excluded from the deferential standard of judicial review. *See* Defendants Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Cross–Motion for Summary Judgment at 2.

The Plaintiff also contends that the Defendants' service of an affidavit by Roderick Womack (Nov. 13, 2000) raises a "red herring." Attached to the Womack affidavit, as Exhibit A, is a copy of the Metropolitan Life Insurance Company Group Insurance Contract and Certificate of Insurance which Mr. Womack purports was in effect during 1997. In addition, he has attached to his affidavit, as Exhibit B, what he claims are relevant pages from that certificate showing that loss of thumb means, "actual severance at or above the joint nearest the hand." The Plaintiff argues that the Certificate of Insurance is not the Plan or Summary Plan Description, and is counter signed on January 21, 1998, which he argues is evidence that it was not effect in 1997, and that the papers contained in Exhibit B are undated. Plaintiff's Reply Memorandum of Law in Further Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendant[ ]s['] Motion for Summary Judgment (Nov. 15, 2000) at 1. As a preliminary matter, the

Court does not consider that the Certificate of Insurance, or other papers attached to Mr. Womak's affidavit, govern the Court's decision here. Rather, they are applicable only insofar as they can be used to determine whether the Plan Administrator's decision was arbitrary and capricious.

The Plaintiff argues that the Plan Administrator's determination that the word "severed" means a complete detachment is an arbitrary and capricious decision; thus, the Court should reverse that decision and review the case *de novo*, correctly applying New York law, which, as previously mentioned, has interpreted the word "severed" in insurance contracts to not require the entire loss of the body part to which the contract referred. *See, e.g., Sneck v. Travellers' Ins. Co. of Hartford Conn.,* 88 Hun. 94, 68 N.Y.St.Rep. 658, 34 N.Y.S. 545 (N.Y.Sup.Ct.1895); *Mifsud v. Allstate Ins. Co.,* 116 Misc.2d 720, 456 N.Y.S.2d 316 (Civ.Ct.1982). Thus, the issue before the Court is whether the Plan Administrator's interpretation of "severed" as requiring the entire separation of the Plaintiff's thumb was arbitrary and capricious.

The Plaintiff relies on Ninth Circuit case law holdings which support his position that, for example, state law regarding interpretation of contracts applies to the Plan Administrator. *See Kunin v. Benefit Trust Life Ins. Co.,* 910 F.2d 534 (9th Cir.1990) (rule of *contra proferentem* applies to interpretation of ERISA benefit trust). The Ninth Circuit reasoned [1] that employee benefit contracts, and in that case, specifically an insurance policy, "are almost always drafted by specialists employed by the insurer . . . [and] an insurer's practice of forcing the insured to guess and hope regarding the scope of coverage requires that any doubts be resolved in favor of the party who has been placed in such a predicament." *Id.* at 540. The Plaintiff reasons that if ERISA was enacted to *protect* employees, as is evident in Congress's statement of purpose for the Act, it only makes sense to require the Plan Administrator to follow state law interpretation of the term "severed."

The Defendants, however, point out that in *Pagan,* the Second Circuit specifically rejected the application of state law to Plan Administrators, particularly the rule of *contra proferentem,* which is "that when one party is responsible for the drafting of an instrument, absent evidence indicating the intention of the parties, any ambiguity will be resolved against the drafter." *Pagan,* 52 F.3d 438, 443 (citation omitted). This holding, they argue, shows the Second Circuit's rejection of the argument that state law on the interpretation of contract terms applies at all to the Plan Administrator.

The Court agrees that the Second Circuit holding in *Pagan* supports the Defendant's position. A reading of *Pagan* leads this Court to conclude that the Plan Administrator has authority under ERISA to interpret "severed" differently from the manner it might be interpreted by a New York court, and consequently the fact that she has done so is not *ipso facto,* proof of arbitrariness and capriciousness on her part. Further, based on the evidentiary submissions, the Court finds, as a matter of law, that the Plan Administrator's interpretation [2] of "severed" to require actual separation of the thumb from the remainder of the hand is reasonable under the terms of the Plan.

## IV. Conclusion

The Court grants the Defendants' motion for summary judgment and denies the

1. The Ninth Circuit in *Kunin* decided to treat the case under the "arbitrary and capricious" standard even though they found they were not required to do so. *Id.* at 537.

2. The Court notes that "severed" is defined in a dictionary as, "*—vt.* 1. To divide or separate into parts. 2. To cut or break forcibly from a whole. 3. To break off, as a relationship: dissolve.*—vi.* 1. To become cut or broken apart. 2. To separate or go apart: divide." Webster's II New College Dictionary (1995) at 1009.

Plaintiff's motion for summary judgment, dismissing the case.