**Alan R. MELVIN, et al., Plaintiffs,**

v.

**UA LOCAL 13 PENSION PLAN, et al., Defendants.**

No. 98–CV–6347.

United States District Court,
W.D. New York.

March 7, 2002.

Michael A. Rosenhouse, Pittsford, New York, for plaintiff, Alan R. Melvin.

Robert T. DiGiulio, Laurie A. Dorywalsky, Osborne Reed & Burke, LLP, Rochester, New York, for defendants.

## DECISION AND ORDER

SIRAGUSA, District Judge.

### INTRODUCTION

This is a pension benefit case in which plaintiff[1] sought to have his fourteen years of pre-break service treated the same as his eleven years of post-break service in calculating his pension benefit under the U.A. Local 13 Pension Plan ("Plan"). Five causes of action remain in plaintiff's Amended Complaint. They are as follows:

First cause of action—in which plaintiff seeks enforcement of the plain meaning of § 3.3 of the Plan, reinstating his prior years of service for the purpose of calculating the benefits due to him;

Second cause of action—plaintiff claims that defendants' interpretation of § 3.3 of the Plan violates the Employee Retirement Income Security Act of 1974 ("ERISA"), § 204(b)(3), 29 U.S.Code § 1054(b)(3) and regulations thereunder, specifically 29 C.F.R. § 2530.204–1, by including the pre-break years only for measurement of vesting and not for accrual of benefits;

Third cause of action—plaintiff claims that defendants' interpretation of the Plan provisions concerning break in service and reinstatement of prior years of service violates ERISA's anti-backloading of accruals rule under 29 U.S.Code § 1054;

Seventh cause of action—plaintiff claims defendants breached their fiduciary duties under ERISA § 404, 29 U.S.Code § 1104, by failing to award plaintiff pension benefits without regard to any break in service; and

Ninth cause of action—plaintiff claims that defendants' delay in disclosing the trust agreement (the Plan) and pages 12 and 13 of the Plan Trust Agreement within 30 days of plaintiff's request, are in violation of ERISA § 504(b)(4), 29 U.S.Code § 1104(b)(4).

The case is before the Court for decisions on both parties' separate motions for summary judgment and ancillary motions for relief. For the reasons stated below, the Court grants plaintiff's and defendants' motions in part and denies them in part.

### BACKGROUND

Plaintiff, who is now deceased, was a member of UA Local 13 and employed within the plumbing and pipefitting industry from 1967 until his retirement in 1998. For most of this time plaintiff was employed under the terms of a collective bargaining agreement negotiated between UA Local 13 and plaintiff's employers. However, for thirty-nine months, from November 23, 1981 to March 1, 1985, plaintiff worked as a salesman for a plumbing contractor, a position not covered by the collective bargaining agreement. Prior to accepting that position, plaintiff was told by UA Local 13 that this position would not adversely affect his retirement benefits. Plaintiff further maintained that he was also told by defendant that his employment as a salesman would not adversely affect his retirement benefits, although defendants dispute this.

In January of 1998, when plaintiff was considering retirement, he was informed by the UA Local 13 Pension Plan ("Plan") that if he retired March 1, 1998, his pension benefits were not going to be as much as he had anticipated. The Plan took the position that the thirty-nine month period from November 23, 1981 to March 1, 1985, during which he was employed as a salesman for the plumbing contractor, constituted a break in service for the purpose of

---

1. The only motions filed by a plaintiff are the ones filed by Alan R. Melvin. His former wife was added as a necessary party, but did not appear for the motions considered by the Court in this decision and order.

determining his accrued pension benefits. In calculating plaintiff's pension benefits, the Plan gave him credit for fourteen years service at the rate in effect in 1981, *i.e.*, $20.00 per month per year of service, and for eleven years of service at the rate in effect in 1998, *i.e.*, $116.00 per month per year of service. The total monthly benefit to which plaintiff was entitled, according to the Plan, was $1,571.30 [2] per month. Plaintiff, however, contended that his entire monthly benefit should be calculated at the rate of $116.00 per month per year of service, entitling him to a total monthly benefit of $2,915.30.

Counsel agree that the Plan, as amended on January 1, 1989, is the Plan under consideration in this case. Amended Complaint [3] at Exhibit C; Defendants' Memorandum of Law (# 50) at 4. Plan § 3.3 discusses a break in service and defines it as any Plan year after July 31, 1976, in which an employee fails to accrue at least 81 hours of service. Exceptions are made for an employee on active duty in the armed forces of the United States, or for one serving as a union official. Section 3.3(c) [4] reads in pertinent part as follows:

> If a Participant incurs a Break in Service on or after August 1, 1976 and, subsequently, becomes an Active Participant and eligible to participate in this Plan as set forth in Article II, his prior service shall be reinstated if (1) the Participant was Vested in his Accrued Benefit when he became a Nonactive Partic-

ipant, or (2) the Break in Service is less than the Participant's prior service plus one. For Active Participants who have had an hour of service on or after January 1, 1988, and who have had a Break in Service after that date, and subsequently, become an Active Participant and eligible to participate in this Plan as set forth in Article II, his prior service shall be reinstated if he either meets the above conditions or if his Break in Service is (5) years or fewer.

In addition to the break in service provision, the Plan also contains Article IV, Accrued Benefit, section 4.4, which reads as follows:

> If an Active Participant has incurred a Break in Service, the Accrued Benefit for any Credited Service earned prior to the Break in Service is equal to the Monthly Unit of Benefit in effect at the time the Break in Service occurred times the Credited Service at that date.

## ANALYSIS

### A. SUMMARY JUDGMENT STANDARD

The law on summary judgment is well settled. Summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). That is, the

---

**2.** The Plan calculation uses 11.1319 years at $116.00 and 14 years at $20.00. Plaintiff's calculation is 25.1319 years at $116.00.

**3.** Though the body of the Amended Complaint, in the first cause of action, refers to the 1997 Plan, the Court also notes that the Amended Complaint, in the same sentence, refers the reader to Exhibit C of the Amended Complaint. Exhibit C contains the 1989 Plan, with amendments through December 17, 1997. Amendments 1, (April 23, 1993), 2 (April 23, 1993), 3 (March 3, 1995), 4 (March

3, 1995), 5 (September 14, 1995), 6 (January 1, 1989), 7 (May 3, 1996), 8 (June 9, 1997), 9 (June 4, 1997), 10 (December 3, 1997) and 11 (December 17, 1997) to the January 1, 1989 Plan created an early retirement benefit and a supplemental retirement benefit, changed the benefit rate and provided one-time payments for retirees already receiving benefits, but did not alter the sections of the Plan under consideration in this decision.

**4.** As amended by Amendment No. 9 (June 9, 1997).

burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893 (3rd Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the "evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its initial obligation, the opposing party must produce evidentiary proof in admissible form sufficient to raise a material question of fact to defeat a motion for summary judgment, or in the alternative, demonstrate an acceptable excuse for its failure to meet this requirement. *Duplantis v. Shell Off Shore, Inc.,* 948 F.2d 187 (5th Cir.1991); Fed.R.Civ.P. 56(f).

Once the moving party has met its burden, mere conclusions or unsubstantiated allegations or assertions on the part of the opposing party are insufficient to defeat a motion for summary judgment. *Knight v. United States Fire Ins. Co.,* 804 F.2d 9 (2d Cir.1986). The court, of course, must examine the facts in the light most favorable to the party opposing summary judgment, according the non-moving party every inference which may be drawn from the facts presented. *International Raw Materials, Ltd. v. Stauffer Chemical Co.,* 898 F.2d 946 (3d Cir.1990). However, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections,* 84 F.3d 614, 619 (2d Cir.1996).

## B. PLAINTIFF'S CROSS-MOTIONS TO STRIKE AND DEFENDANTS' MOTION FOR JUDICIAL NOTICE

Before considering the parties' motions for summary judgment, the Court must address plaintiff's cross-motion to strike and defendants' cross-motion to take judicial notice. Plaintiff sought to strike the affidavit of defendants' witness, Charles McLaughlin, the Plan's actuary, on the basis that he will testify only about legal opinions concerning plaintiff's claims and lacks personal knowledge. Plaintiff also sought to strike the affidavit of defendants' witness, David Peck, the Plan Trust Manager, whom plaintiff claimed also has no personal knowledge of the case. In both instances, defendants argue that each is experienced in interpreting the Plan and, specifically, that McLaughlin can discuss the anti-back end loading rules of ERISA § 204(b)(1), whereas Peck can testify about how the break in service rules are communicated to "the ordinary Plan participant," and with regard to the calculation of pension benefits.

It is well settled that in a summary judgment motion only evidentiary proof in admissible form can be considered. *Celotex Corp. v. Catrett,* 477 U.S. at 327, 106 S.Ct. 2548. Since the Court finds that the affidavits of Charles McLaughlin and David Peck do not constitute "evidentiary proof in admissible form," plaintiff's application to strike them is granted.

Additionally, plaintiff moved to strike a portion of the affidavit of defendants' counsel, Robert T. DiGiulio, Esq. Plaintiff claimed that ¶ 32 through ¶ 39 of DiGiulio's affidavit were nothing more than a reply to plaintiff's opposition to defendants' motion for summary judgment and, under Local Rules of Civil Procedure for the Western District of New York § 7.1(c), defendants did not reserve the right reply. The Court agrees. Therefore, the Court will strike

and not consider those paragraphs in determining the motions before it.

Plaintiff did not oppose defendants' cross-motion for the Court to take judicial notice of a proceeding before the Honorable Jonathan W. Feldman, United States Magistrate Judge, on February 4, 1999, regarding a stipulation between the parties limiting the amount of damages that could be awarded under the ninth cause of action of the Amended Complaint. The Court will grant defendants' motion and take judicial notice of the stipulation.

### C. Theories Encompassed by the Seventh Cause of Action of the Amended Complaint

In accordance with the Court's direction at oral argument, *see* Transcript of Oral Argument ("Transcript") at 41, plaintiff's counsel sent the Court a letter outlining the theories of recovery encompassed by the seventh cause of action. Michael A. Rosenhouse letter (Apr. 30, 2001). In the letter, counsel maintains that "[t]he Amended Complaint sets forth both the factual elements and the legal theory of estoppel ..." and "that under the rules of pleading the claims are properly before the Court even without an amendment, and that the defendants cannot reasonably claim any prejudice." *Id.* at 3. The fourth cause of action reads in total as follows:

45. Under section 404 of ERISA, 29 U.S.Code § 1104, defendants Board and trustees at all relevant times have had an obligation to administer the Plan solely in the interest of the participants and beneficiaries, and they continue to have such an obligation.

46. Under the terms of the Plan, there is ample opportunity for the Plan fiduciaries to avoid unjust enrichment of the Plan and Local 13 at plaintiff's expense without in the least violating their fiduciary duties even under their own inter-

pretation of the break-in-service provisions of the Plan.

47. Under the circumstances, failure to award plaintiff his pension without regard to any supposed break in service, is arbitrary and capricious and constitutes a violation of said defendants' fiduciary duties under section 404 of ERISA, 29 U.S.Code § 1104.

Amended Complaint at 11.

Plaintiff argued that the seventh cause of action, along with paragraphs 30, 31, 40, 43 and 49 of the Amended Complaint, set forth the necessary factual elements to claim a material misrepresentation, reliance, and damages.

"[P]rinciples of estoppel can apply in ERISA cases under extraordinary circumstances." *Schonholz[v. Long Island Jewish Medical Center,* 87 F.3d [72] at 78 [(2d Cir.1996)]]. A plaintiff must satisfy four elements to succeed on a claim of promissory estoppel: " '(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced.' " *Aramony v. United Way Replacement Benefit Plan,* 191 F.3d 140, 151 (2d Cir. 1999) (quoting *Schonholz,* 87 F.3d at 79). Additionally, "an ERISA plaintiff must 'adduce [ ] not only facts sufficient to support the four basic elements of promissory estoppel, but facts sufficient to [satisfy an] 'extraordinary circumstances' requirement as well.' " *Aramony,* 191 F.3d at 151 (quoting *Devlin v. Transp. Comms. Int'l Union,* 173 F.3d 94, 102 (2d Cir.1999)).

·*Devlin v. Empire Blue Cross and Blue Shield,* 274 F.3d 76, 85 (2d Cir.2001). The Court finds that the factual statements in paragraphs 29–31 and 49 set forth a sufficient factual basis for plaintiff's claim of equitable estoppel based on the misrepresentations of an alleged agent of the Plan, and extraordinary circumstances (plain-

tiff's change of employment based on this advice). However, the Court finds that material factual issues exist as to whether the alleged agent of the Plan, Chris Farrell, was or represented himself as an agent for the Plan; thus, summary judgment on the seventh cause of action is precluded for both plaintiff and defendants.

### D. Plaintiff's and Defendants' Motions for Summary Judgment

#### 1. *Standard of review*

■ ERISA restricts a court's ability to review the decisions of a plan administrator *if* the plan gives the administrator discretionary authority to construe and interpret the terms of the plan. In such a situation, a court is limited to the "arbitrary and capricious" standard of review. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In this case, however, the Plan does not give that discretion to the plan administrator. Defendants contend that the 1976 Plan § 1.6 vests the plan administrator with the necessary discretion to avoid *de novo* review. Memorandum of Law in Opposition to Plaintiffs' [*sic.*] Motion for Summary Judgment ("Defendant's Memorandum in Opposition") (# 70), at 13. However, at issue before the Court is the Plan as amended in 1989, not the 1976 one from which defendants quote, and the 1989 Plan, in its Preamble, states that, "[e]ffective January 1, 1989, the Plan has been amended and restated in its entirety." Plan at 1; *cf. Van Wuyckhuyse v. Metropolitan Life Ins. Co.,* 131 F.Supp.2d 384 (W.D.N.Y.2001). In *Van Wuyckhuyse,* the plan specifically gave the plan administrator "the exclusive right: to interpret the Plan; to determine eligibility for Coverage; to determine eligibility for Benefits; to construe any ambiguous provision of the Plan; to correct any default; to supply any omission; to reconcile any inconsistency; and to decide any and all questions arising

in the administration; interpretation; and application of the Plan." *Id.* at 386. There is no such provision in the plan at issue here and parol evidence is not admissible on this point. *See Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir.1990). Therefore, the Court must review the plan administrator's decision *de novo. Firestone Tire & Rubber Co.,* 489 U.S. at 108–15, 109 S.Ct. 948.

#### 2. *THE PLAN AS A CONTRACT*

During oral argument, both counsel agreed that the Plan is a contract and, under the rules of contract construction, if the contract's provisions are clear, the Court would not need any parole evidence. The Supreme Court, in *Firestone Tire and Rubber,* stated, with respect to the interpretation of plan agreements:

As they do with contractual provisions, courts construe terms in trust agreements without deferring to either party's interpretation. "The extent of the duties and powers of a trustee is determined by the rules of law that are applicable to the situation, and not the rules that the trustee or his attorney believes to be applicable, and by the terms of the trust *as the court may interpret them,* and not as they may be interpreted by the trustee himself or by his attorney." 3 W. Fratcher, Scott on Trusts § 201, at 221 (emphasis added). A trustee who is in doubt as to the interpretation of the instrument can protect himself by obtaining instructions from the court. Bogert & Bogert, *supra,* § 559, at 162–168; Restatement (Second) of Trusts § 201, Comment *b* (1959). *See also United States v. Mason,* 412 U.S. 391, 399, 93 S.Ct. 2202, 37 L.Ed.2d 22 (1973). The terms of trusts created by written instruments are "determined by the provisions of the instrument as interpreted in light of all the circumstances and such other evidence of the intention of the

settlor with respect to the trust as is not inadmissible." Restatement (Second) of Trusts § 4, Comment *d* (1959).

*Firestone Tire & Rubber Co.,* 489 U.S. at 112, 109 S.Ct. 948. Thus, if the Court can make sense of both section 3.3(c) and section 4.4 of the Plan, there would be no ambiguity and, therefore, no need to consider evidence outside the plain words of the contract itself. *See Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir.1990).

At first glance, it may appear that an ambiguity exists between Plan sections 4.4 and 3.3(c). Plan section 3.3(c) restores all pre-break service (under the conditions existing for this plaintiff), but section 4.4 creates an "Accrued Benefit" equal to the pre-break years times the Monthly Unit of Benefit in effect at the time of the break. The term "Accrued Benefit" is not defined in Plan Article I, Definitions, but is discussed in Article IV, specifically section 4.3. That section, in turn, refers to section 4.4, which freezes the Accrued Benefit at the monthly rate in effect at the time of the break. Thus, Plan section 3.3(c), which restores an employee's pre-break service, appears to conflict with section 4.4, which severely limits the restoration.

■ Plaintiff urged the Court to interpret Plan section 4.4 as applicable only to those who experience a break in service, but whose pre-break years are *not* restored pursuant to the terms of Plan section 3.3(c). This would resolve any apparent ambiguity and give meaning to all the terms of the Plan. Plaintiff also argued that this interpretation is supported by the plan administrator's letter to plaintiff, dated September 25, 2000: A copy of the letter is located in Exhibit F of the Affirmation of Michael A. Rosenhouse, Esq. (# 59). That letter refers to a "second break in service" which is how the writer, David Peck, Benefit Administrator, referred to plaintiff's ceasing to work on

January 1, 1998. Mr. Peck used the term "break in service" to describe what was, essentially, plaintiff's retirement. Plaintiff performed no further covered employment after his "second break in service" in January 1998. Thus, if the plan administrator can interpret "break in service" to mean no further service, then the Court can reconcile the apparent conflict between sections 3.3(c) and 4.4 by finding that the plain meaning of the two provisions is that if prior service is restored under section 3.3(c), then section 4.4 is not applicable.

Defendants' opposition to plaintiff's proposed interpretation is based solely on their faulty premise that the Court must review the administrator's decision under the "arbitrary and capricious" standard. *See* Defendant's Memorandum in Opposition at 12. As explained above, the Court reviews the plan administrator's decision in this case *de novo*. In the face of such review, defendants have not offered any persuasive reason not to interpret the two Plan sections in the manner suggested by plaintiff. Therefore, the Court finds that Plan section 4.4 applies only to those plan participants who have a break in service and whose prior service is *not* reinstated pursuant to Plan section 3.3(c).

### 3. *ERISA Considerations*

The Court will also address plaintiff's and defendants' arguments as to the legality of the plan administrator's interpretation of the freezing effect of Plan section 4.4 as applied to plaintiff. At oral argument, the Court addressed plaintiff's contention that even if the Plan's provisions in sections 3.3(c) and 4.4 were clearly unambiguous in defendants' favor, calculating plaintiff's pre-break retirement benefits at $20 per month per year of service would nonetheless be illegal under ERISA. Specifically, plaintiff claimed that, to do so,

would violate the anti-backloading provisions of ERISA.

However, defendants argue that section 4.4, with its "freezing" of the rate for the years prior to the break in service, is legal under ERISA, since "the Plan here does not provide a windfall to those participants who have worked for a long period of time and who have not incurred a break in service. Rather, the rate increases gradually based upon other permissible 'externalities.'" Defendants' Memorandum of Law (# 50) at 9. Defendants contend that during the two year break in service, an employee's employer is not making any contributions to the pension plan. For that reason, defendants maintain the Plan was drafted to limit benefits accrued prior to a break in service to the rate in effect at the time of the break in service. However, the Plan also provides relief from this rule—if the employee works just 81 hours of service in a Plan year, he will not have incurred a break in service. Plan § 3.3(a). Had plaintiff worked only 161 hours [5] during the two break years, then defendants agree his pre-break and post-break service would have all counted towards the monthly rate in effect at the time of his retirement. See Plan § 3.3(a).

ERISA is "an intricate, comprehensive statute." Boggs v. Boggs, 520 U.S. 833, 849, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997). The first step in an analysis of ERISA "begins with 'the language of the statute.'"

Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999), and requires the Court to determine whether the language at issue has a "plain and unambiguous meaning with regard to the particular dispute in the case" as determined "by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole. Where the meaning of a statute is textually ambiguous we may consult its legislative history." Washington v. Schriver, 240 F.3d 101, 108 (2d Cir.2001) (citations and internal quotation marks omitted).

Two particular sections of ERISA are pertinent to the consideration of the matter before the Court. In ERISA § 203, 29 U.S.Code § 1053, the statute sets forth minimum vesting standards and nonforfeitability requirements. Section 203 contains a break in service rule at sub-paragraph (b)(3)(B). In pertinent part, it states "in the case of any employee who had any 1–year break in service, years of service before such break shall not be required to be taken into account *until* he has completed a year of service after his return." 29 U.S.Code § 1053(b)(3)(B) (emphasis added). In contrast, ERISA § 204, 29 U.S.Code § 1054, Benefit Accrual Requirements, does not contain a break in service rule. However, plaintiff argued, and the Court agrees, that the regulations promul-

---

**5.** Moreover, since "Break in Service" is defined as *two* or more consecutive break years, then plaintiff would only have had to work 81 hours in the middle of his 39–month break to avoid two or more consecutive break years. Since the Plan Year is defined, for periods after 1976, as August 1 of one year to July 31 of the following year, plaintiff incurred a partial year of work in Plan Year August 1, 1981 to July 31, 1982, a full break in Plan Year August 1, 1982 to July 31, 1983, and a full break in Plan Year August 1, 1983 to July 31, 1984, then a partial year in Plan Year August 1, 1984 to July 31, 1985. Had he worked just 81 hours in either of the Plan Years beginning August 1, 1982, or August 1, 1983, he would have avoided a break in service. Thus, defendants' argument that an employer's failure to make contributions during break years justifies freezing the benefit rate at the beginning of the break year makes no sense when viewed under the facts of this case. Presumably, no employer contributions would have been made during plaintiff's 39–month break, except for contributions made during 81 days in 1982 or 1983, yet, plaintiff would not have incurred a Break in Service under section 3.3. See Transcript at 28.

gated by the Secretary pursuant to 29 U.S.Code § 1054, specifically 29 C.F.R. § 2530.204–1(b)(1), incorporate ERISA § 203's break in service rules into ERISA § 204. The Eastern District of New York has also reached this conclusion. *See, Carollo v. Cement and Concrete Workers District Council Pension Plan,* 964 F.Supp. 677, 683 (E.D.N.Y.1997). Although the pension plan in *Carollo* used a different method for calculating benefits, the basic principles apply equally to this case. In *Carollo,* an employee who worked 25 years without a break in service greater than two years, would, in his 25th year, have his pension benefit recalculated for all previous years of service at two percent of final average monthly earnings. As the court in *Carollo* found, Congress's intent in enacting ERISA was to provide minimum vesting standards *and* minimum accrual rates "to prevent the employer from backloading benefits—making benefits accrue very slowly until the employee is near retirement age." *Carollo,* 964 F.Supp. at 681 (citation omitted). The plan in *Carollo* calculated the retirement benefit of an employee with 25 year of continuous service at 2% of a participant's highest five years of earnings in the ten years prior to retirement. However, for a participant who incurred a break in service longer than two years, the benefit was calculated only at 2% of the average of a participant's *entire* career earnings. The Eastern District found that by changing the "base," in that case the average monthly pay, "solely" by reason of a participant's increased service, violated 26 C.F.R. § 1.411(b)–1(b)(2)(ii)(F).

In the case at bar, as in *Carollo,* a participant with a break in service of two years or more is penalized for that break in service by having his retirement benefit calculated using two different bases: (1) a pre-break base (years of service prior to the break times the monthly benefit in effect at the beginning of the break); and (2) a post-break base (years of service following the break times the monthly benefit at the beginning of the second break in service, that is, retirement). The change in base here also violates 26 C.F.R. § 1.411(b)–1(b)(2)(ii)(F) (the 133 1/3 percent rule).

ERISA sets out three backloading tests: (1) the 3 percent rule; (2) the 133 1/3 percent rule; and (3) the fractional rule. 29 U.S.Code § 1054. ERISA requires that a plan must satisfy one of these three rules.[6] At oral argument, counsel for defendants argued that the Plan here satisfied the 133 1/3 percent rule. Transcript at 25–26. That rule is met if,

> (1) pension benefits accrue ratably such that participants receive, each year, a definite portion of their projected retirement benefit, and (2) the rate of accrual does not, in any given year, increase by more than 33 1/3%.

*Carollo,* 964 F.Supp. at 681; 29 U.S.Code § 1054(b)(1)(B).

In the case at bar, the Plan locked plaintiff into a benefit rate of $20 per month per year of service on November 1, 1981, the start of his break in service. On March 1, 1985, when plaintiff returned to

---

**6.** ERISA sets out different tests to apply in the case of a "defined benefit plan" or a "defined contribution plan." The Plan at issue here is not a "defined contribution plan," 29 U.S.Code § 1054(a)(2). Pension Plan Defendants' Response to Plaintiff's First Request for Admission at ¶ 4. Defendants never answered plaintiff's request for admission on the point of whether the Plan in this case meets the definition of a "defined benefit plan." At oral argument, plaintiff's counsel described the Plan as one with benefits "based on a certain dollar per month per year of service . . .", Transcript at 13, and plaintiff has stated the Plan is a defined benefit pension plan. Plaintiff's Statement under Local Rule 56 (# 58) at ¶ 2. Defendants do not dispute this characterization. *See* Defendants' Statement in Response to Plaintiff's Statement Under Local Rule 56 (# 74).

service, he was entitled to a benefit rate of $40 per month per year of service (after achieving a minimum of 500 hours of service in that year). Plan Exhibit A & § 2.1. That represents a 200 percent increase in three years, three months and 30 days, or approximately a 66 percent increase per year. Defendants argue that, "[c]learly, the Plan does not provide a windfall to those participants who have worked for a long period of time and who have not incurred a break in service. Rather, the rate increases gradually based upon other permissible 'externalities.'" Defendants' Memorandum of Law at 9. Defendants then attach a chart showing the monthly unit of benefit from August 1, 1954 until December 31, 1981. *Id.* at Exhibit B. Though the chart is relevant to plaintiff's pre-break years' rates of benefits, it does not address the post-break years.

The purpose of the anti-backloading provision, which is also contained in the Internal Revenue Code[7], was explained in a House Report from the Committee on Ways and Means:

> The primary purpose of [minimum accrual rates] is to prevent attempts to defeat the objectives of the minimum vesting provisions by providing undue "backloading," *i.e.,* by providing inordinately low rates of accrual in the employee's early years of service when he is most likely to leave the firm and by concentrating the accrual of benefits in the employee's later years of service when he is most likely to remain with the firm until retirement.

H.R.Rep. No. 93–807 (Feb. 21, 1974), 1974 U.S.C.C.A.N. 4670, 4688. The Internal Revenue Code also governs this area and in particular, regulations promulgated by the Commissioner of Internal revenue state that:

> (F) Computation of benefit. A plan shall not satisfy the requirements of this subparagraph if the base for the computation of retirement benefits changes solely by reason of an increase in the number of years of participation. Thus, for example, a plan will not satisfy the requirements of this subparagraph if it provides a benefit, commencing at normal retirement age, of the sum of (1) 1 percent of average compensation for a participant's first 3 years of participation multiplied by his first 10 years of participation (or, if less than 10 his total years of participation) and (2) 1 percent of average compensation for a participant's 3 highest years of participation multiplied by each year of participation subsequent to the 10th year.

26 C.F.R. § 1.41(b)–1(b)(2)(ii)(F). In support of his contention, that the interpretation urged by defendant violates the anti-backloading provisions of provisions of ERISA, plaintiff has cited to 26 C.F.R. § 1.411(a)–3T[8] (emphasis added), "[a] plan will not be considered to satisfy the requirements of paragraph (b), (c), or (d) of this section [pertaining to qualifying as a qualified trust under 26 U.S.Code § 401] unless it satisfies all requirements of a particular one of such paragraphs with respect to *all of an employee's years of service.*" This regulation is pursuant to 26 U.S.Code § 411 which defines minimum vesting standards of a qualified trust un-

---

**7.** The Report of the Ways and Means Committee on H.R. 12855 made clear that the Internal Revenue Code and the labor law pertaining to pensions were to be coordinated, and that both the Labor Department and the Department of the Treasury would enforce identical provisions. H.R.Rep. 93–807 (Feb. 21, 1974), 1974 U.S.C.C.A.N. 4670, 4670.

**8.** The "T" indicates this is a temporary regulation. The Court notes that the non-temporary regulation at 26 C.F.R. § 1.411(a)–3, revised as of April 1, 2001, also contains the quoted language.

der a retirement plan. Paragraph (b) of section 411 contains the 133 1/3 percent rule. 26 U.S.Code § 411(b)(1)(B).

In addition to the rules cited above, the Ways and Means Committee Report on H.R. 12855 [9], stated the following:

> The bill also provides guidance to the Secretary or his delegate in issuing regulations in regard to the computation of the years of service of an employee who has a break in service. This is of significance since an employee will generally receive greater vested rights if all his periods of service with the employer are combined and treated as one period of service than if each period of service interrupted by a break is treated separately. This matter involves difficult issues. On the one hand, it appears desirable not to require service prior to the break to be merged with service after the break where the break in service is of substantial duration and the period of prior service is relatively short. This is because in such cases, the plan frequently will not have records regarding the employee's prior service and the administrative difficulties resulting from any requirement to merge service prior to the break with service after the break might make employers reluctant to rehire employees and yet at the same time would not provide substantial benefits for the latter. On the other hand, where the break in service is of relatively moderate duration, treating each period of service as a separate period could give rise to abuses by giving employers an inducement to discharge covered employees and then rehire them after a short time in order to reduce the cost of financing plan benefits. An additional consideration is that where an employee has acquired an attachment to the firm by serving a substantial number of years, and particularly where he has accumulated substantial vested rights to benefits, it seems reasonable that all his service including service prior to the break should be taken into consideration in determining his participation under the plan.

1974 U.S.C.C.A.N. 4670, 4683. Although the bill was never enacted, the House Conference Report on Public Law 93–406, the Employee Retirement Income Security Act of 1974, contains this language:

> The general rule is that all service with the employer (pre-break and post-break) is to be taken into account for purposes of determining whether the employee has met the participation requirements. However, if an employee has a 1–year break in service, the plan may require a 1–year waiting period before reentry, at which point the employee's pre-break and post-break service are to be aggregated, and the employee is to receive full credit for the waiting period service. For example, if the plan is on a calendar year basis, and an employee who has a 1–year break in service reenters employment on November 1, 1976, works 200 hours in 1976, and 1700 hours by November 1, 1977, the employee under this provision would be considered as reentering the plan for 1977. As a result, his pre-break and post-break service would be aggregated, and he would advance one year on the vesting schedule for 1977. He would also accrue benefits for that year. (Other rules with respect to break-in-service are explained below in connection with vesting and benefit accrual.)

H.Conf.Rep. 93–1280 (Aug. 12, 1974), 1974 U.S.C.C.A.N. 5038, 5046. Further pertinent language contained in the Report discusses the break-in-service rules:

---

9.  A bill to amend the Internal Revenue Code of 1954 to provide pension reform.

The rules with respect to breaks in service for vesting *and benefit accrual purposes* may be summarized as follows: (1) If an employee has a 1–year break in service, the plan may require (for administrative reasons) a 1–year waiting period before his pre-break and post-break service must be aggregated under the plan. However, once the employee has completed this waiting period, he must receive credit for that year (for purposes of vesting *and accrued benefit* ).

\*   \*   \*   \*   \*   \*

(3) Subject to rules (1) and (2), once an employee has achieved any percentage of vesting, then all of his pre-break and post-break service must be aggregated *for all purposes.*

H.Conf.Rep. 93–1280 (Aug. 12, 1974), 1974 U.S.C.C.A.N. 5038, 5041 (emphasis added).

Based on the legislative history referred to above, the Court concludes that Congress intended pre- and post-break service to be accumulated for purposes of both vesting and accrual of benefits. Therefore, the plan administrator's interpretation of the Plan here as requiring pre-break service benefits to be frozen at the rate in effect at the time of the break is contrary to the statute.

### E. NINTH CAUSE OF ACTION LIMITATION

The parties' attorneys entered into a stipulation regarding plaintiff's claims under the ninth cause of action of the Amended Complaint, as set out in the partial transcript attached to the affidavit of Robert T. DiGiulio, Esq., as Exhibit A. DiGuilio aff. (Apr. 18, 2001) (# 79) at Exhibit A. In that stipulation, plaintiff agreed "to forego any statutory penalty which might be due him under count nine of the complaint." *Id.* at 2. In addition, plaintiff's entitlement to attorney fees under the ninth cause of action was limited to "fees which would be due by virtue of the efforts exerted by plaintiff's counsel to obtain the documents sought in count nine. . . ." *Id.* Plaintiff's claim on this cause of action is conceded by defendants to the extent that plaintiff has preserved his claim for attorney's fees from the date when plaintiff started to draft the Complaint and up to February 4, 1999. However, defendants' concession applies only if plaintiff is successful in proving his case under the ninth cause of action. Affidavit in Opposition to Plaintiff's Cross–Motion (# 82) at 11. Neither party appears to have moved for summary judgment on this cause of action. The Court has not found any evidentiary proof in admissible form with regard to the ninth cause of action among the papers filed by plaintiff or defendants.

### CONCLUSION

The Court grants summary judgment to plaintiff on the first cause of action, that the plain meaning of the Plan's provisions must be read to harmonize sections 3.3(c) and 4.4; the Court grants summary judgment to plaintiff on the second cause of action, that the Plan §§ 3.3(c) and 4.4, as interpreted by defendants freezing plaintiff's benefits for the first ten years of his service, is contrary to ERISA; the Court grants summary judgment to plaintiff on the third cause of action regarding the ERISA back end loading 133 1/3 percent rule; the Court denies summary judgment to plaintiff on the seventh cause of action regarding defendants' fiduciary duties under 29 U.S.Code § 1104 as there remains a material issue of fact.

In light of the above, it is hereby

ORDERED, that defendants' motion (# 49) for summary judgment is denied;

ORDERED, that plaintiff's motion (# 56) for summary judgment is granted in part, as detailed above;

ORDERED, that plaintiff's motion (# 65) to strike the affidavits of Charles McLaughlin and David Peck is granted;

ORDERED, that the applications (## 76–1 & 79) for an expedited hearing are denied as moot; and it is further

ORDERED, that plaintiff's motion (# 76–2) to strike ¶ 32 through ¶ 39 of the affidavit of Robert T. DiGiulio, Esq. is granted pursuant to Local Rules of Civil Procedure for the Western District of New York § 7.1(c); and it is further

ORDERED, that defendants' motion (# 78) that the Court take judicial notice of the stipulation of the attorneys for plaintiff and defendants entered before Magistrate Judge Jonathan Feldman as reflected in the partial transcript of proceedings held before Judge Feldman on February 4, 1999 and contained in Robert T. DiGiulio's affidavit (# 79), filed on April 18, 2001, as Exhibit A, is granted.

IT IS SO ORDERED.